**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| KENNETH C. GRIFFIN,<br><br>   Plaintiff,<br><br> v.<br><br>INTERNAL REVENUE SERVICE and U.S. DEPARTMENT OF THE TREASURY,<br><br>   Defendants. | Case No. 1:22-cv-24023-Scola/Goodman |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## **<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

INTRODUCTION ........................................................................................................................ 1

ALLEGED FACTS ..................................................................................................................... 3

LEGAL STANDARD .................................................................................................................. 7

ARGUMENT ............................................................................................................................... 8

    I.    MR. GRIFFIN PROPERLY PLEAD HIS UNLAWFUL DISCLOSURE
        CLAIM ...................................................................................................... 10

        A.    Mr. Griffin's Unlawful Disclosure Claim Satisfies The Rule 8
               Pleading Standard. ..................................................................... 10

        B.    Mr. Griffin Plead Sufficient Facts To Support A Plausible Claim
               That "Return Or Return Information" Was Disclosed To ProPublica.
               ................................................................................................... 15

        C.    Mr. Griffin Plead Sufficient Facts To Support A Plausible Claim
               That IRS Personnel Disclosed The Information. ......................... 16

    II.    MR. GRIFFIN PROPERLY PLEAD HIS SYSTEMS FAILURE CLAIM ......... 19

CONCLUSION .......................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................8, 9, 12, 16, 17

*Bancroft Global Dev. v. United States*,
  330 F. Supp. 3d 82 (D.D.C. 2018).............................................................17, 18, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................8

*Clark v. United States*,
  2022 WL 3017383 (S.D. Fla. July 18, 2022) ......................................................10

*Davidson v. Maraj*,
  609 F. App'x 994 (11th Cir. 2015)...................................................................13

*Evangelou v. District of Columbia*,
  901 F. Supp. 2d 159 (D.D.C. 2012)..................................................................18

*F.A.A. v. Cooper*,
  566 U.S. 284 (2012) .....................................................................................20

*Fattah v. United States*,
  2014 WL 4249768 (E.D. Pa. Aug. 27, 2014) ......................................................19

*Glynn Envt'l Coalition, Inc. v. Sea Island Acquisition, LLC*,
  26 F.4th 1235 (11th Cir. 2022)........................................................................12

*Haskett v. United States*,
  2010 WL 11558115 (S.D. Fla. Oct. 25, 2010) .....................................................11

*Kumar v. KRS Glob. Biotechnology, Inc.*,
  2021 WL 4427456 (S.D. Fla. Sept. 27, 2021).................................................13, 20

*Lake v. Aetna Life Ins. Co.*,
  2021 WL 2649234 (M.D. Fla. June 28, 2021) .....................................................14

*Linchpins of Liberty v. United States*,
  No. 1:13-cv-00777-RBW (D.D.C. Dec. 8, 2017)....................................................5

*The National Organization for Marriage, Inc. v. United States*,
  No. 1:13-cv-01225-JCC-IDD (E.D.V.A. June 23, 2014).........................................5

*Newbauer v. Carnival Corp.*,
  26 F.4th 931 (11th Cir. 2022) ....................................................................8, 9, 16

*NorCal Tea Party Patriots v. IRS*,
  No. 1:13-cv-341 (S.D. Ohio Aug. 8, 2018).............................................5, 6, 16, 17

*Osheroff v. Humana Inc.*,
  776 F.3d 805 (11th Cir. 2015) ..........................................................................5

*Randall v. Scott*,
  610 F.3d 701, 705 (11th Cir.2010) .............................................................................13

*Strong v. United States*,
  1998 WL 990581 (W.D. La. Dec. 10, 1998) .......................................................17, 19

*True the Vote v. United States*,
  No. 1:13-cv-00734-RBW (D.D.C. Jan. 21, 2018) ......................................................5

*Universal Express, Inc. v. SEC*,
  177 Fed. App'x 52 (11th Cir. 2006) ...........................................................................5

*United States v. Zak*,
  481 F. Supp. 3d 1305 (N.D. Ga. 2020)...........................................................17, 18, 19

*Young v. Grand Canyon Univ.*,
  57 F.4th 861 (11th Cir. 2023) ...............................................................................8, 20

*Z Street v. Kautter*,
  No. 1:12-cv-401-KBJ (D.D.C. Feb. 13, 2018) ..........................................................5

## Statutes and Rules

5 U.S.C. § 552a.........................................................................................................19

26 U.S.C. § 6103 ...................................................................................6, 11, 15, 17

26 U.S.C. § 7431 .........................................................................................8, 14, 15

Fed. R. Civ. P. 8...................................................................................................7, 10, 11

Fed. R. Civ. P. 12.............................................................................................8, 9, 10, 20

## INTRODUCTION

Plaintiff Kenneth C. Griffin, by and through his undersigned counsel, respectfully opposes Defendants Internal Revenue Service ("IRS") and the U.S. Department of Treasury's (collectively, the "government") motion to dismiss Mr. Griffin's Complaint ("MTD").

In his Complaint, Mr. Griffin has detailed a pattern of willful disregard that resulted in the IRS's wholesale failure to protect the private information of American citizens.  Since 2010, the IRS has been warned—year after year—by the Treasury Inspector General for Tax Administration ("TIGTA") that the "number one major management and performance challenge area" is security over taxpayer data and protection of IRS resources.  Compl. ¶¶ 8-9.  And the IRS effectively did nothing, for ten years running.  Mr. Griffin has plead specific allegations regarding the deficiencies in the IRS's protocols and procedures that were allowed to linger for years, and resulted in IRS personnel exploiting its "willful failure to establish adequate administrative, technical, and physical safeguards for the IRS's data and records systems to misappropriate confidential tax return information for the highest earning U.S. taxpayers, including Mr. Griffin, and then unlawfully disclosed those materials to ProPublica for publication."  Compl. ¶ 3.  The misconduct alleged by Mr. Griffin flouts statutory protections expressly prescribed by Congress in its concerted effort to ensure the IRS protects taxpayers' confidential information.  By the IRS's instant account, however, those statutory protections are for naught.  Despite its complete disregard of the remedial steps its own Inspector General told the IRS to take in order to establish adequate safeguards for its data and records systems from unauthorized employees, the IRS now seeks to evade the rule of law and to immunize itself against any semblance of accountability *even* in the face of Congress's explicit authorization for an aggrieved taxpayer to sue over it.  Because Mr. Griffin's Complaint is well plead is well and there is no legal basis for the threshold dismissal the IRS requests, the case should proceed to discovery so these allegations—gravely concerning

on their face—can be considered on a full and fair factual record.

In its motion, the government argues this case should be dismissed because Mr. Griffin cannot, pre-discovery, rule out "all other possibilities or explanations" for how his tax information may have leaked to the press (alongside that of other high-earning taxpayers, each of which was entrusted to the IRS).  MTD at 12.  Without offering a shred of factual support (or even logic), the IRS tries to indict the Complaint by positing "that the source is a foreign government hostile to the United States" (a foreign government that, by the IRS's hypothesis, makes peculiar sport of outing high-earning U.S. taxpayers).  *Id*.  The IRS similarly faults Mr. Griffin for being unable at this stage to specify the "unknown individual(s) in an organization of nearly 80,000 employees" and the "unknown methods" and "unspecified security weaknesses" by which the IRS perpetrated or at least enabled the leak.  *Id*. at 11-12.  Thus, unless Mr. Griffin can, at the outset, "explain how the IRS perpetrated the wrongful access and disclosure of his information," *id*. at 4, and successfully chase down what the IRS calls "a needle in a haystack," *id*. at 19, he cannot possibly state a valid claim against the IRS, according to the IRS.  In other words, the *only* case where the IRS could *ever* be sued is one where it need *never* be sued—because the IRS presumably would have confessed its misdeeds, outed each culprit by name, and supplied all particulars to the would-be plaintiff.  Such a self-defeating reading of clearcut statutory protections makes a mockery of Congress's intent.

Were that not enough, the IRS turns upside-down the Federal Rules of Civil Procedure with its self-serving effort to speculate contrary to Mr. Griffin's concrete factual allegations.  At the pleading stage, all of Mr. Griffin's allegations must be credited and all reasonable inferences drawn in his favor.  Instead, the IRS is doing the opposite, trying to refute Mr. Griffin's concrete factual allegations with its own tortured speculation.  Because the IRS's positing of alternative

(and incredible) explanations for how a select slice of taxpayer information has systematically found its way to the press could not justify dismissal at the *summary judgment* stage, it *a fortiori* cannot justify dismissal at the *pleading* stage.  Mr. Griffin has ample good faith bases to allege that the IRS leaked his information in light of "systemic failures by the IRS to establish appropriate administrative, technical, and physical safeguards to adequately protect the unlawful disclosure of taxpayers' confidential tax return information" and the IRS's steadfast indifference. Compl. at 9-12.  His allegations are to be taken as true for present purposes, and they cannot be summarily dismissed.

If the IRS wants somehow to refute Mr. Griffin's allegations and thereby exonerate itself, it should do so with factual proof, based on discovery.  But it cannot slam the courthouse doors shut based merely on its own speculation about implausible hypotheticals.  Not only are Mr. Griffin's claims valid, but they exemplify what Congress has specifically authorized aggrieved taxpayers to bring before federal courts.

## ALLEGED FACTS

The case arises out of the IRS's unlawful disclosure to ProPublica, an investigative journalism website, of a vast trove of Internal Revenue Service data on the tax returns "of thousands of the nation's wealthiest people, covering more than 15 years" (Compl. ¶ 4) as well as the IRS's intentional failure to establish adequate safeguards over its data and records systems, which ultimately allowed this wrongful disclosure to happen (*id.* ¶ 7).  In 2021, when ProPublica first published the confidential tax return information it received from the IRS, ProPublica explained that it had been furnished "IRS records" and "IRS data" in "raw form" in response to a series of stories ProPublica published in 2018 about IRS budget cuts leading to an exodus of IRS Revenue Agents whose work focused on auditing "corporations and the wealthy in particular." (*Id*. ¶ 29.)  The illegally disclosed information included not just "tax returns" of thousands of

private citizens, but also confidential return information that is "sent to the IRS about financial activities" such as "income and taxes," "investments, stock trades, gambling winnings and even the results of audits." (*Id.* ¶ 4.)

Although the ProPublica disclosure violated taxpayers' privacy on a massive scale, it was hardly unexpected. The IRS has known for over a decade that, without effective security controls, its systems of records could be infiltrated by unauthorized IRS personnel. (Compl. ¶ 30.) Indeed, every year from fiscal year 2010 through 2020, the Treasury Inspector General for Tax Administration has warned the IRS that its security deficiencies were the agency's "number one major management and performance challenge area." (*Id*. ¶ 8, n.6.)

Despite these dire, recurring warnings, the IRS has consistently failed to establish adequate safeguards to protect against insider threats of unlawful disclosures of taxpayers' confidential information by IRS personnel. (Compl. ¶¶ 20-28.) As a result, the system was—and likely remains—exceptionally vulnerable to IRS personnel who wish to exploit taxpayers' confidential return information to advance political, ideological, or personal objectives. (*Id.* ¶¶ 3, 28.) Indeed, the sheer scope of the security vulnerabilities that were unique to IRS personnel during the relevant period was breathtaking and included: providing unauthorized IRS personnel with "unnecessary elevated privilege" and access to confidential taxpayer information; physical security failures that gave IRS employees "uncontrolled access to the computer room" that houses confidential tax return information; failures to implement adequate encryption systems, which allowed IRS personnel to extract data into a readable format; and the inability to provide complete audit trails, leaving IRS personnel free to obscure whether they touch certain taxpayers' files and other confidential information. (*See id.* ¶¶ 9, 25-26.)

To make matters worse, the IRS concealed its intentional data security failures. (*Id.* ¶ 11.)

For example, even when the IRS told TIGTA that it would perform database vulnerability scanning enterprise-wide by 2016, it did not do so.  (*Id.*)  Instead, without informing TIGTA, the IRS unilaterally "reduce[d] vulnerability scanning of [its] databases" "without following proper procedures or policy," and then hid its decision (and failures) from TIGTA for years.  (*Id.*)  The IRS's repeated failures to establish appropriate data and records safeguards that might otherwise constrain IRS personnel and allow them to be held accountable for misappropriating confidential information paved the way for the massive data breach at the heart of this case.  (*Id.* ¶¶ 3, 28.)

Nor is it much surprise that IRS personnel would abuse their positions of power and trust. Even before the most recent disclosure, IRS personnel, unsatisfied with the IRS's performance of its mission or federal tax law more generally, have repeatedly targeted certain taxpayers or disclosed confidential taxpayer information,[1] including to ProPublica.[2]

The latest massive disclosure, however, was the most significant in its scale and its intrusion on Americans' privacy.  As alleged in the Complaint, between late 2019 and June 8,

---

[1] *See, e.g.*, Consent Judgment, *The National Organization for Marriage, Inc. v. United States*, No. 1:13-cv-01225-JCC-IDD (E.D.V.A. June 23, 2014) ($50,000 consent judgment for Section 7431 wrongful disclosure claim); *see also, e.g.,* Order Granting Final Approval of Class Action Settlement, *NorCal Tea Party Patriots v. IRS*, No. 1:13-cv-341 (S.D. Ohio Aug. 8, 2018); Consent Order, *Z Street v. Kautter*, No. 1:12-cv-401-KBJ (D.D.C. Feb. 13, 2018); Consent Order, *True the Vote v. United States*, No. 1:13-cv-00734-RBW (D.D.C. Jan. 21, 2018); Consent Order, *Linchpins of Liberty v. United States*, No. 1:13-cv-00777-RBW (D.D.C. Dec. 8, 2017).  This Court may take judicial notice of these consent orders and judgments.  *See Universal Express, Inc. v. SEC*, 177 Fed. App'x 52, 53 (11th Cir. 2006).

[2] *See, e.g.,* Kim Barker, *Karl Rove's Dark Money Group Promised IRS It Would Spend 'Limited' Money on Elections*, PROPUBLICA, December 14, 2012, https://www.propublica.org/article/what-karl-roves-dark-money-nonprofit-told-the-irs.  The Court may take judicial notice of media publications "for the limited purpose of determining which statements the documents contain."  *Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

2021,[3] IRS personnel willfully or negligently disclosed Mr. Griffin's and *thousands* of others' confidential tax return information to ProPublica for further publication (Compl. ¶¶ 3-12, 20-30). In so doing, the personnel confirmed to ProPublica that the disclosures were being made in response to the stories it had published in 2018 about the exodus of IRS Revenue Agents whose work focused on auditing "corporations and the wealthy in particular" (*id.* ¶ 29).  The Complaint details the IRS's longstanding security vulnerabilities described above, the specific information belonging to Mr. Griffin that was disclosed, the tax years the information covered, the time period in which the disclosures must have occurred (late 2019 to mid-2021), the circumstances and scale of the disclosure, and the ultimate recipient of the information (ProPublica).

As members of Congress have acknowledged, there "is little doubt" that the confidential tax return information disclosed to ProPublica, including Mr. Griffin's confidential tax return information, "came from inside the IRS" and that the disclosure was "precisely what 26 U.S.C. § 6103 and related statutes were designed to prevent."  (Compl. ¶ 32.)  ProPublica confirmed that the confidential tax return information it received, including Mr. Griffin's information, involved "people who, in good faith, sent their tax and personal and private information to the Internal Revenue Service with no expectation that it would ever be made public."  (*Id.* ¶ 6.)  Nevertheless, in the nearly two years since these unlawful disclosures, the IRS has stonewalled the victims, the public, and even members of Congress, who have repeatedly demanded information about how the IRS and the Treasury Department allowed the illegal disclosures to happen.[4]  (*Id.* ¶ 12.)

---

[3] On June 8, 2021, ProPublica first published the confidential tax return information it received in an article titled, *The Secret IRS Files: Trove of Never-Before-Seen Records Reveal How the Wealthiest Avoid Income Tax.  See* Compl. ¶ 4, n.2.

[4] Even though the matter has purportedly been under investigation for years, the IRS has never publicly suggested the disclosures were the result of a cyber intrusion by a foreign state actor or criminal enterprise—which event would raise significant national-security concerns and presumably warrant apprising Congress.

The government has nevertheless now moved to dismiss Mr. Griffin's Complaint on the pleadings, purportedly because his Complaint fails to establish even a plausible basis to conclude that IRS personnel disclosed his information.  Despite the fact that the disclosure involved years' worth of confidential tax return information for thousands of the nation's wealthiest taxpayers, including Mr. Griffin, and that ProPublica has all but admitted that the information came from disgruntled IRS employees, the government speculates that the information *might* have been obtained from the taxpayers' "accountant[s]" or from a "foreign government hostile to the United States."   MTD at 12, 15.  And the government faults Mr. Griffin for failing to identify, without the benefit of discovery, the name of the particular disgruntled IRS employee who disclosed Mr. Griffin's confidential tax return information to ProPublica or the specific date on which he or she did so.  *Id.* at 17-18.  Ultimately, the government's position is that Mr. Griffin must wait until the government completes its own long-pending investigation into the disclosure of his confidential tax information and publicizes the identity of the IRS personnel responsible before he may seek the remedy that Congress established for precisely this scenario (Count I – "Unlawful Disclosure Claim") and redress for the harm caused by the IRS's failure to establish adequate safeguards to protect Mr. Griffin's confidential return information (Count II – "Systems Failure Claim").  But the government is under no obligation to resolve or publicize the results of its investigation, and certainly not before the expiration of the statute of limitations that would bar Mr. Griffin's claims.

There is no tenable basis to disregard the allegations in Mr. Griffin's well-plead Complaint and slam the courthouse doors shut on him, and this Court should deny the government's bid to accomplish that unjust result.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 12(b)(6) requires

that a complaint include "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,'" *Young v. Grand Canyon Univ.*, 57 F.4th 861, 867 (11th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Those rules do "not require 'detailed factual allegations.'"  *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).  Rather, they require only that the complaint contain more factual allegations than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, so long as the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the case must proceed past the pleadings stage.  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  That standard is "not akin to a 'probability requirement,'" but simply requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

The government's motion to dismiss rests largely on an interpretation of 26 U.S.C. § 7431 that would render it illusory and thwart Congress's basic purpose in enacting it.  Under the guise of the pleading standards of Rules 8 and 12(b)(6), the government argues that, unless a taxpayer can identify the precise moment in time when a disclosure occurred, and the specific individual in the 80,000-person IRS bureaucracy responsible for the disclosure, a Section 7431 action cannot advance beyond the pleadings stage.  But taxpayers are not held to such a high standard, and the government's own cited authorities show that such an unrealistic level of detail is not required to survive a motion to dismiss.

The government's position is also at odds with itself.  The government argues that Mr. Griffin does not plead sufficient facts to put the government on notice of what to investigate in order to respond to Mr. Griffin's Complaint *and* simultaneously argues that Mr. Griffin must await

the forthcoming results of the ongoing government investigation into precisely that before he can seek judicial relief.  That makes no sense.  The government, of course, knows full well what to investigate:  The specific facts plead in the Complaint, which the government mostly ignores, establish the overwhelming likelihood that, at some point during a relatively limited window of time, IRS personnel willfully or negligently disclosed Mr. Griffin's taxpayer information to ProPublica.[5]

The Complaint's Unlawful Disclosure Claim readily satisfies the standards of Rule 8 and Rule 12(b)(6) because it contains "factual content that allows the court to draw the reasonable inference that the [government] is liable for the misconduct alleged." *Newbauer*, 26 F.4th at 934 (quoting *Iqbal*, 556 U.S. at 678).  Although the government argues that the Complaint is a "shotgun" pleading filled with "conjecture" and "speculation," the specific allegations in the Complaint refute that characterization:  The Complaint alleges in specific terms the particular information disclosed, the tax years that the information covered, the time period in which the disclosures occurred, the circumstances of the disclosure, and the ultimate recipient of the information.  Moreover, the facts plead in the Complaint establish the reasonable inference that the information could have been disclosed by no one other than IRS personnel, particularly given the longstanding security vulnerabilities that make IRS data uniquely susceptible to theft by employees, the sheer volume of taxpayer information involved, and the disclosure to an investigative journalism outfit openly sympathetic to IRS personnel grievances.

The government's motion to dismiss Mr. Griffin's Systems Failure Claim is similarly meritless.  The government argues the claim is preempted "to the extent" it seeks damages for the

---

[5] That is why members of Congress, TIGTA, and officials from the Treasury Department and the IRS itself have all acknowledged that the ProPublica disclosures warrant an independent investigation into the involvement of IRS personnel.

unlawful disclosure of Mr. Griffin's tax return information, but that claim does not seek relief for the disclosure, so that argument is beside the point. Rather, the Systems Failure Claim seeks redress for the specific harm caused by the IRS's willful and intentional failure to adequately protect Mr. Griffin's confidential return information. And although the government further argues that the claim does not adequately plead damages, it misapprehends the pleading standard, which does not require a plaintiff to specify the nature of the damages incurred.

Accordingly, this Court should deny the government's motion to dismiss.

## I.   MR. GRIFFIN PROPERLY PLEAD HIS UNLAWFUL DISCLOSURE CLAIM

The government argues that Mr. Griffin's Unlawful Disclosure Claim does not meet the standards of Rule 8 and Rule 12(b)(6). Each argument essentially rests on the same proposition: that because Mr. Griffin cannot plead information uniquely in the possession of the IRS—*e.g.*, which specific IRS personnel disclosed his tax return information and on what date—he cannot proceed past the pleadings stage. That position is contrary to the governing pleading standards and would eviscerate Section 7431 as a means of protecting taxpayers from willful or negligent disclosures.

### A.   Mr. Griffin's Unlawful Disclosure Claim Satisfies The Rule 8 Pleading Standard.

The government first claims that the Unlawful Disclosure Claim fails to meet the basic Rule 8 pleading standard because it is supposedly a "shotgun pleading." MTD at 10-13. This claim is without merit. Mr. Griffin's detailed Complaint far exceeds the Rule 8 standard, which requires only "a short and plain statement" showing his entitlement to relief. *See Clark v. United States*, 2022 WL 3017383, at *2 (S.D. Fla. July 18, 2022) (*citing* Fed. R. Civ. P. 8(a)(2)). "To state a claim under Section 7431, the plaintiff must allege that the inspection or disclosure (1) was unauthorized; (2) was made knowingly or by reason of negligence; and (3) was in violation of

Section 6103." *Haskett v. United States*, 2010 WL 11558115, at *2 (S.D. Fla. Oct. 25, 2010).  The

complaint sets forth in detail the following specific facts that satisfy those elements:

- Over the course of a decade, the IRS willfully failed to implement adequate safeguards in violation of federal statutes and regulations and TIGTA recommendations, which left those systems "vulnerable to . . . malicious efforts by IRS employees or contractors to illicitly obtain and misappropriate confidential information."  Compl. ¶¶ 20-28.

- In 2018, ProPublica published a series of reports on how IRS budget cuts led to a widespread exodus of IRS Revenue Agents whose work focused on auditing the tax returns of corporations and wealthy taxpayers.  Compl. ¶ 29.

- In response to ProPublica's articles from 2018, IRS personnel willfully or negligently misappropriated and disclosed confidential tax return information of thousands of the highest-earning taxpayers for the tax periods 2013 to 2018, including Mr. Griffin's information.  Compl. ¶¶ 28-30.

- The specific information disclosed included "not just tax returns, but also . . . information that is sent to the IRS about financial activities such as income and taxes, investments, stock trades, gambling winnings and even the result of audits."  Compl. ¶ 30 (internal quotation marks omitted).

- ProPublica published an array of confidential information about Mr. Griffin, including his "purported average annual income, purported percent of income deducted, and purported average effective federal income tax rate for those periods."  Compl. ¶ 31.

- IRS personnel acted "with the intent that ProPublica would widely publish the information."  Compl. ¶ 43.

- The disclosure violated Section 6103 and did not result from an erroneous interpretation of that section.  Compl. ¶¶ 44-46.

In short, Mr. Griffin's Complaint states in clear, concrete terms that, between late 2019 and

June 2021, IRS personnel willfully or negligently disclosed Mr. Griffin's confidential tax return

information, for tax periods including 2013 through 2018, to ProPublica in violation of 26 U.S.C.

§ 6103.  That is more than sufficient to satisfy Rule 8.

Although the government acknowledges that it has notice of the nature of Mr. Griffin's

Unlawful Disclosure Claim (MTD at 11), it argues that the claim should be dismissed because it

amounts to a "shotgun pleading" that "offers only vague and conclusory allegations" supposedly

based on "speculation and conjecture."  MTD at 11.  But there is nothing vague or conclusory about the allegations.  The Complaint specifically alleges that IRS personnel disclosed Mr. Griffin's information, either willfully or negligently, and it identifies with particularity (i) the information disclosed, (ii) the tax years the information covered, (iii) the time period in which the disclosures occurred, (iv) the circumstances of the disclosure (*e.g.*, the IRS's deficient security policies, ProPublica's admission that the information was provided in response to its reporting in 2018 about IRS Revenue Agents whose work focused on auditing corporations and wealthy taxpayers, and ProPublica's current reporting), and (v) the ultimate recipient of the information. It also explains that the disclosure was part of a broader purposeful or negligent leak of confidential tax return information of *thousands* of the wealthiest taxpayers—making it exceptionally unlikely that the disclosure originated somewhere else, such as the office of any individual taxpayer's accountant or lawyer.

None of those is close to a "conclusory" allegation, *i.e.*, "a legal conclusion that is 'couched as a factual allegation.'"  *Glynn Envt'l Coalition, Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).  Rather, the conclusion that IRS personnel disclosed the information to ProPublica is a reasonable—indeed, far and away the *most* reasonable—inference about what happened.  Only IRS personnel would have access to 15 years of confidential tax return information for thousands of taxpayers.  *See* Compl. ¶¶ 29-30.  IRS personnel were uniquely well-positioned to exploit the IRS's failures in physical security, data encryption, and data security, and the IRS had a history of targeting and publicly leaking confidential tax return information of certain taxpayers and disclosing it to ProPublica in particular.  *See supra*, nn.1-2.  Moreover, ProPublica itself confirmed that it received Mr. Griffin's and others' confidential tax return information in response to the stories that it had published in

2018 about the exodus of IRS Revenue Agents whose work focused on auditing "corporations and the wealthy in particular." *See id.* ¶ 29. Accordingly, it is extremely likely—and at a minimum plausible—that IRS personnel were responsible for the unlawful disclosures.

The government telegraphs its misunderstanding of the applicable legal standard when it objects that the Complaint merely "infers" that IRS personnel were responsible for the unlawful disclosure of Mr. Griffin's confidential tax return information to ProPublica. *See* MTD at 11-12. "[A]t the motion-to-dismiss stage all reasonable inferences must be drawn in [claimant's] favor," so there is nothing improper about a complaint making reasonable inference based on the plead facts and common sense. *Davidson v. Maraj*, 609 F. App'x 994, 999 (11th Cir. 2015) (*citing Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010)) (emphasis omitted).

Similarly, the government suggests that Mr. Griffin's Unlawful Disclosure Claim does not satisfy the Rule 8 pleading standard because it omits or discounts "all other possibilities or explanations" for the unlawful disclosures. *See* MTD at 12. That argument turns the pleading standard on its head.[6] Mr. Griffin is not required to "rule out" or otherwise disprove alternative hypotheses or defenses in his Complaint. To the contrary, "if two different inferences are reasonable, . . . dismissal is improper," because "at the motion to dismiss stage all reasonable inferences must be drawn in the plaintiff's favor." *Kumar v. KRS Glob. Biotechnology, Inc.*, 2021 WL 4427456, at *2 (S.D. Fla. Sept. 27, 2021) (*citing Davidson*, 609 F. App'x at 994). For that reason, the government's suggestion that other actors might theoretically be responsible for the

---

[6] It is also implausible in the extreme: It rests on the fanciful notion that a hostile foreign state or other group would steal a massive amount of confidential information on the wealthiest U.S. taxpayers and then, rather than exploiting the information for its intelligence value or using it to perpetrate identity fraud or other criminal acts, leak the information to an investigative journalism outfit that has focused on alleged flaws in U.S. tax policy. Whatever can be said about that farfetched theory, it certainly does not preclude the far more obvious explanation—that IRS personnel sympathetic to ProPublica's perspective disclosed the information.

disclosure of Mr. Griffin's information has no bearing on whether the claim should be dismissed. *See Lake v. Aetna Life Ins. Co.*, 2021 WL 2649234, at *3 (M.D. Fla. June 28, 2021) ("[A]ttempt to disprove [plaintiff's] allegations is premature at the motion-to-dismiss stage.") (internal citation omitted).

Finally, the government suggests that Mr. Griffin should wait until after TIGTA and other investigative authorities complete their investigations before seeking judicial redress. *See* MTD at 13. That contention has no basis in the statutory text, and the government cites no authority supporting what would amount to a judge-made accrual rule for Section 7431 claims. Section 7431 provides a statutory right of action that exists independently of any discretionary remedial action the government may (or may not) undertake, entitling Mr. Griffin to have his properly plead claim adjudicated without delay. *See* 26 U.S.C. § 7431. Indeed, one obvious purpose of Section 7431 is to *force* the government to investigate the circumstances of an unlawful disclosure. It would defeat that core objective to require any taxpayers who do not somehow already know the identity of the culpable IRS personnel to wait until the government decides to tell them what happened (if that day ever comes).

Moreover, barring Mr. Griffin's Unlawful Disclosure Claim until the completion of the government's supposedly pending investigation would subject his claim to unnecessary and unwarranted hardship. There is no indication that the government will ever complete its investigation into the IRS's unlawful disclosures to ProPublica (*see* Compl. ¶ 12), nor is there any indication that the government would make any findings public, particularly as members of Congress "are concerned that [the government] will continue to sit on this issue under the guise of § 6103 to avoid addressing the issue publicly." *See* Compl. ¶ 12, n.21. Even if the government were ultimately to publish *some* findings, Mr. Griffin's Unlawful Disclosure Claim might by that

point be time-barred, as the government would surely argue. *See* 26 U.S.C. § 7431(d) (two year statute of limitations for Section 7431 action, running from the date the disclosure is discovered).

In sum, there is no basis under Rule 8 to dismiss Mr. Griffin's Unlawful Disclosure Claim.

**B.** **Mr. Griffin Plead Sufficient Facts To Support A Plausible Claim That "Return Or Return Information" Was Disclosed To ProPublica.**

The government's contention that the Complaint fails to adequately allege the disclosure of "return or return information" is head-scratching. The government does not contest that Mr. Griffin's "confidential tax return information," as alleged in the Complaint, constitutes information that would be protected from disclosure by 26 U.S.C. § 6103 so long as it was "stored in the IRS's files." *See* MTD at 15-16. But the government argues that the Complaint does not sufficiently allege that the information was stolen from the IRS's files, speculating that it could have come from "the files of the taxpayer's accountant." MTD at 15.

As already explained, that theory could not possibly make sense—let alone establish that the contrary allegation, as set forth in the Complaint, is so *implausible* that it should be dismissed on the pleadings. The ProPublica disclosure involved *years* of confidential return information covering *thousands* of taxpayers. The likelihood that ProPublica or another actor obtained that information by infiltrating the files of thousands of accountants or other private actors, rather than the IRS, is virtually zero. At minimum, it is overwhelmingly likely (and certainly reasonable to infer) that the information came from the IRS's files based on the allegations in the Complaint.

Even putting aside the implausibility underlying the government's argument, ProPublica's own description of the materials provides still more basis for inferring that the information came from the IRS's files. For example, ProPublica named the disclosed information the "Secret IRS Files," and it described those IRS files as including "not just tax returns," but also "information that is sent to the IRS about financial activities" such as "income and taxes," "investments, stock

trades, gambling winnings and even the results of audits." *See* Compl. ¶ 4.  By ProPublica's own reporting, the confidential tax return information it received, including Mr. Griffin's confidential tax return information, included "personal and private information [sent] to the Internal Revenue Service with no expectation that it would ever be made public."  *See id.* ¶ 6; *see also Davidson*, 609 F. App'x at 999 ("[A]t the motion-to-dismiss stage *all* reasonable inferences *must* be drawn in [claimant's] favor.").  Accordingly, the Complaint easily satisfies the pleading standard for the "return or return information" element.

### C.      Mr. Griffin Plead Sufficient Facts To Support A Plausible Claim That IRS Personnel Disclosed The Information.

The government also claims that the Complaint "does not plausibly allege that any IRS employee knowingly or negligently gave [Mr. Griffin's] information to ProPublica."  MTD at 17-20.  Again, that argument misapprehends the pleading standard, which does "not require 'detailed factual allegations'" but merely facts that establish "more than a sheer possibility that a defendant has acted unlawfully."  *See Newbauer*, 26 F.4th at 934 (quoting *Iqbal*, 556 U.S. at 678).  The Complaint here readily clears that modest bar.  As explained above, the Complaint contains detailed discussion of the particular information that was disclosed, the relevant tax years, the time periods in which the disclosures were made, and the circumstances and scale of the disclosures (including security vulnerabilities uniquely susceptible to insider theft).  All of that information leads to the plausible—indeed, virtually inexorable—inference that the disclosure originated inside the IRS.

The government nevertheless contends that the Complaint does not put the government "on notice" of Mr. Griffin's claim because it "does not allege the who or when" to sufficiently allow the government to defend itself.  MTD at 19.  That contention cannot be taken seriously, including because it defies the government's own arguments.  To reiterate, the facts alleged in the

Complaint outline Mr. Griffin's claim that, between late 2019 and June 2021, IRS personnel wrongfully disclosed to ProPublica his confidential tax return information in violation of 26 U.S.C. § 6103.  The government has failed to posit any credible reason why it is incapable of investigating that straightforward claim.  Indeed, the government's position contradicts its argument just a few pages earlier that Mr. Griffin does not lack a "remedy" because he can simply await the results of the pending government investigation.  MTD at 13.  Although that argument has no grounding in the statutory text, it confirms that the government can readily investigate—indeed, supposedly *is* already investigating—the circumstances that led to the disclosure of Mr. Griffin's information.

The government relies on three out-of-circuit district court decisions, but the analysis and holdings of those cases—two of which *denied* a motion to dismiss a Section 7431 claim—refute the government's own position.  *See Bancroft Global Dev. v. United States*, 330 F. Supp. 3d 82, 103 (D.D.C. 2018); *Strong v. United States*, 1998 WL 990581, *2-3 (W.D. La. Dec. 10, 1998); *United States v. Zak*, 481 F. Supp. 3d 1305, 1311 (N.D. Ga. 2020).  For example, while the government cherry-picks *Bancroft*'s statement that a plaintiff generally must allege certain information to state a claim, including "'who made the alleged disclosures,'" MTD at 17, it omits that the court denied the motion to dismiss even though the plaintiffs did "not specifically allege who made the disclosure, or when."  *Bancroft*, 330 F. Supp. 3d at 102.  Rather, the plaintiffs in *Bancroft* had "merely allege[d] that '[u]pon further information and belie[f], . . . confidential information was disclosed to ICE officials by *IRS and FBI employees*.'"  *Id.* at 102 (citation omitted) (emphasis added).  The court concluded that, because the government "knows to whom the tax return information was revealed and can also estimate around when this information was revealed," the plaintiffs' complaint was "not so indefinite that the Government cannot respond to plaintiff's pleading."  *Id.*  More generally, the court in *Zak* explained that "a plaintiff may still

allege a [Section 7431] claim only on information and belief where 'the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'"  481 F. Supp. 3d at 1311 (quoting *Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 170 (D.D.C. 2012)).

Both of those propositions are true here:  Only the government knows (or can find out) which IRS personnel disclosed Mr. Griffin's information, but there is every indication that IRS personnel committed the disclosure.  Just as it was sufficient that the plaintiffs in *Bancroft* alleged upon information and belief that "IRS and FBI employees" were responsible for the wrongful disclosure there (*see Bancroft*, 330 F. Supp. 3d at 102), Mr. Griffin's claim is limited to IRS personnel (*see* Compl. ¶¶ 29-30).  And, like in *Bancroft*, the government also knows to whom Mr. Griffin's confidential return information was disclosed (*i.e.*, ProPublica), and it can estimate around when this information was revealed to ProPublica (*i.e.*, between late 2019 through June 2021).  *See Bancroft*, 330 F.Supp.3d at 102.  As such, as in *Bancroft*, Mr. Griffin's Unlawful Disclosure Claim provides more than sufficient factual content to allow the government to defend itself.  *See id.*[7]

Other courts have agreed with *Bancroft* that Section 7431 does *not* require a plaintiff to identify the specific government employee who made the disclosure when doing so is not reasonably possible.  *See, e.g.*, *Fattah v. United States*, 2014 WL 4249768, at *10-11 (E.D. Pa. Aug. 27, 2014) (denying motion to dismiss Section 7431 where plaintiff contends the "IRS" leaked

---

[7] It rightly falls to the government to ascertain who among the 80,000 IRS employees employed between 2019 and 2021 had access to 15 years of confidential tax return information for thousands of the nation's wealthiest taxpayers, including Mr. Griffin's confidential tax return information.  *See Zak*, 481 F. Supp. 3d at 1311 (A plaintiff may allege a claim only on information and belief when "the facts are peculiarly within the possession and control of the defendant[.]") (citation omitted).

plaintiff's confidential return information, even though plaintiff "does not identify who leaked the information"); *see also Strong*, 1998 WL 990581, at *3 (denying motion to dismiss a Section 7431 claim even though the complaint did "not specify who made the alleged improper disclosures to whom, what information was disclosed, and when disclosures were made"); *Zak*, 481 F. Supp. at 1311 ("[A] plaintiff may still allege a [Section 7431] claim only on information and belief where 'the facts are peculiarly within the possession and control of the defendant[.]'") (citation omitted). The government also appears to contend that the time period for the disclosures alleged in the Complaint—between late 2019 and June 2021—is not sufficiently specific.  *See* MTD at 19. Alleging that an unlawful disclosure took place "over the course of a year," however, has been held sufficient to properly plead a Section 7431 claim, particularly when, as here, the government has provided no reason to believe that a more specific range of dates is necessary to investigate the plaintiff's claims.  *See Bancroft*, 330 F.Supp.3d at 101.  Accordingly, the Complaint properly states a claim for unlawful disclosure under Section 7431.

## II.    MR. GRIFFIN PROPERLY PLEAD HIS SYSTEMS FAILURE CLAIM

The government also urges the Court to dismiss Mr. Griffin's Systems Failure Claim (MTD at 5-10), but its arguments are clearly misplaced, and as such, require only a succinct response. First, the government claims that Mr. Griffin's Systems Failure Claim is preempted by Section 7431 "***to the extent*** that it seeks damages for the purported unauthorized disclosure of his confidential tax return information to ProPublica."  MTD at 2, 6-7 (emphasis added).  Mr. Griffin's Systems Failure Claim *does not* seek damages for unlawful disclosure under 5 U.S.C. § 552a(b). Instead, it rests exclusively on the Privacy Act provision governing the failure to protect confidential information, 5 U.S.C. § 552a(e)(10), and seeks redress only for the harm caused by the IRS's failure to protect and secure his confidential information.  *See* Compl. ¶ 54.  The government does not contend that such a claim is preempted, and none of the cases that it cites

would support that view. [8]

Second, the government also claims that Mr. Griffin has not plead sufficient facts to support the claim of actual damages.  *See* MTD at 8.  That, too, is incorrect.  Like hundreds of complaints filed in federal court every day, the Complaint directly and simply alleges that Mr. Griffin "has and will continue to sustain damages directly traceable to the IRS's violations." Compl. ¶ 57.  That suffices under Rule 8 and Rule 12(b)(6).  *See Young*, 57 F.4th at 867 (citations omitted).

The government faults the Complaint for failing to allege that the damages involved "pecuniary or economic harm," as opposed to harms like "shame" or "mortification."  MTD at 9-10.  But while the government is correct that a plaintiff's ultimate monetary recovery under the Privacy Act is limited to pecuniary or economic damage, *see F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012), the government cites no controlling authority holding that a complaint must be dismissed if it fails to specify the nature of the actual damages.  The government's position, moreover, would conflict with the ordinary pleading standard, which requires a court to make all reasonable inferences in favor of a plaintiff.  *See Kumar*, 2021 WL 4427456, at *2 (*citing Davidson*, 609 F. App'x at 994).  Here, it is reasonable to infer that the Complaint's allegation of actual damages refers to pecuniary or economic harm given that such harm is statutorily required.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss should be denied.  To the extent this Court is inclined to dismiss any of Mr. Griffin's claims, Mr. Griffin respectfully requests that this Court grant him leave to amend his Complaint.

---

[8] To the extent the government argues for the first time in its reply brief that 26 U.S.C. §§ 6103 and/or 7431 also preclude Privacy Act claims brought under 5 U.S.C. § 552a(e)(10), Mr. Griffin may seek leave to file a sur reply to address those arguments.

Dated: May 26, 2023

Respectfully submitted,

By: _____
William A. Burck (*pro hac vice*)
Derek L. Shaffer (*pro hac vice*)
Alexander J. Merton (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
ajmerton@quinnemanuel.com

John F. Bash (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
johnbash@quinnemanuel.com

Jason D. Sternberg (Florida Bar No. 72887)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
(305) 402-4880
jasonsternberg@quinnemanuel.com

Christopher D. Kercher (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue, 22nd Floor,
New York, New York 10010
(212) 849-7000
christopherkercher@quinnemanuel.com

*Counsel to Plaintiff Kenneth C. Griffin*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 26th day of May, 2023, I caused a copy of the foregoing document to be filed with the Clerk of Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

By: */s/ Jason D. Sternberg*
Jason D. Sternberg
Fla. Bar No. 72887
jasonsternberg@quinnemanuel.com