**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:22-cv-24023-SCOLA/GOODMAN**

KENNETH C. GRIFFIN,

        Plaintiff,

        v.

INTERNAL REVENUE SERVICE and U.S. DEPARTMENT OF THE TREASURY,

        Defendants.

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**
**PURSUANT TO THE COURT'S ADMINISTRATIVE ORDER [ECF 99]**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  Preliminary Statement ...................................................................................................1

II.  Timeline Of Events Regarding Mr. Littlejohn, The Unlawful Disclosures, And DOJ's Representations.................................................................................................4

III.  Background ...............................................................................................................4

    A.  The Government Fails To Comply With Its Discovery Obligations .....................4

    B.  This Court Orders The Government To Begin Producing Documents, And Also Orders Briefing On The Investigatory Privilege And Section 6103 .............5

        1.  *The Government Is Ordered To Produce Documents* ...............................5

        2.  *Briefing Regarding The Investigatory Privilege* .......................................6

        3.  *Briefing Regarding Applicability And Exceptions To Section 6103* ..........6

        4.  *The Government's Ongoing Discovery Delays*.........................................7

    C.  The Court Orders The Government To Produce As Many Of Mr. Littlejohn's Documents As Possible Prior To His Deposition .......................7

IV.  Requested Relief........................................................................................................8

V.  Argument ..................................................................................................................9

    A.  This Court Should Order The Government To Produce Its Investigative Files ...............................................................................................................9

        1.  *Mr. Littlejohn's Testimony Confirms That The Government's Investigative Files Contain Information Critical To Mr. Griffin's Claims*...........................................................................................10

        2.  *The Government's Privilege Logs Fail To Comply With The Applicable Rules*..........................................................................12

        3.  *Section 6103 Does Not Prohibit The Government From Disclosing Its Investigative Files To Mr. Griffin*......................................................13

        4.  *The Law Enforcement Investigatory Privilege Does Not Apply* ..............14

        5.  *The Privacy Act Does Not Prohibit Disclosure Of PIN's Documents*...........................................................................................17

    B.  This Court Should Order The Government To Produce Communications Between Mr. Littlejohn And A Limited Number Of IRS Personnel ...................18

VI.  Conclusion ..............................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

<b><u>Cases</u></b>

*Baskin v. United States*,
    135 F.3d 338 (5th Cir. 1998) ............................................................................................13

*Fed. Election Comm'n v. Rivera*,
    335 F.R.D. 541 (S.D. Fla. 2020) ................................................................... 14, 15, 16, 17

*J. H. Rutter Rex Mfg. Co. v. N. L. R. B.*,
    473 F.2d 223 (5th Cir. 1973) ............................................................................................15

*Lane v. Cap. Acquisitions*,
    242 F.R.D. 667 (S.D. Fla. 2005) ........................................................................................9

*Laxalt v. McClatchy*,
    809 F.2d 885 (D.C. Cir. 1987) .........................................................................................17

*Perry v. State Farm Fire & Cas. Co.*,
    734 F.2d 1441 (11th Cir. 1984).........................................................................................17

*Ryan v. United States*,
    74 F.3d 1161 (11th Cir. 1996) ..........................................................................................14

*SEC v. Merkin*,
    283 F.R.D. 689 (S.D. Fla. 2012) ........................................................................................9

*Sirmans v. City of S. Miami*,
    86 F.R.D. 492 (S.D. Fla. 1980) ........................................................................................15

*In re The City of N.Y.*,
    607 F.3d 923 (2d Cir. 2010) .............................................................................................14

*TIC Park Ctr. 9, LLC v. Cabot*,
    2017 WL 9988744 (S.D. Fla. June 1, 2017) ....................................................................12

*Tuite v. Henry*,
    181 F.R.D. 175 (D.D.C. 1998)..........................................................................................14

*In re U.S. Dep't of Homeland Sec.*,
    459 F.3d 565 (5th Cir. 2006) ............................................................................................15

*United States v. Littlejohn*,
    No. 1:23-cr-00343 (D.D.C. Sept. 29, 2023) ................................................................4, 11

## Statutes & Rules

5 U.S.C. § 552a ................................................................................................................17

26 U.S.C. § 6103 ........................................................................................................ *passim*

26 U.S.C. § 7431 ...........................................................................................1, 2, 11, 18, 19

Fed. R. Civ. P. 26 ............................................................................................ 9, 12, 17, 19

Fed. R. Civ. P. 34 ..............................................................................................................20

Fed. R. Crim. P. 6 ...............................................................................................................3

S.D. Fla L.R. 26.1 .............................................................................................................11

## Other Authorities

28 C.F.R. § 16.91 ..............................................................................................................17

DOJ Criminal Tax Manual (2022) ....................................................................................13

*The IRS, the President's Fiscal Year 2023 Budget, and the 2022 Filing Season:*
  *Hearing before the S. Comm. On Finance*, 117th Cong. (Apr. 7, 2022) .................................2

In accordance with the Court's March 8, 2024 Post-Discovery Hearing Administrative Order ("Administrative Order," ECF 99),[1] Plaintiff Kenneth C. Griffin ("Mr. Griffin") respectfully submits this motion to compel discovery from Defendants Internal Revenue Service ("IRS") and U.S. Department of the Treasury (collectively, the "Government").

## I.     PRELIMINARY STATEMENT

Beginning as early as September 2017, the IRS serially violated 26 U.S.C. § 7431(a)(1) by unlawfully disclosing Mr. Griffin's confidential tax return information.  Although 26 U.S.C. § 6103(n) required the IRS to restrict Charles Edward Littlejohn's access to Mr. Griffin's taxpayer identity information to instances in which Mr. Littlejohn specifically needed it, Mr. Littlejohn revealed in his deposition that he had access to *every single tax return filed with the IRS over the past 15 years.*  Mr. Littlejohn explained that he could "access tax returns at will," and that "███████████████████████████████████████████████."[2]  What is more, the IRS failed to heed more than a decade of warnings that its systemic failures to establish data security safeguards made it vulnerable to exactly this manner of unlawful disclosure; as Mr. Littlejohn testified, he could search, download, and ████████████████████████ without encumbrance.[3]

In November 2020, Mr. Littlejohn used this virtually limitless access to unlawfully disclose Mr. Griffin's and approximately 7,500 other taxpayers' confidential tax return information to

---

[1]   The Court's Discovery Procedures Order provides that no motions to compel "shall be filed unless specifically authorized by the Court."  ECF 16 at 3.  Mr. Griffin files the instant motion in response to the Court's invitation to "demonstrate to the Court through Mr. Littlejohn's deposition testimony *why* the Court should require the Government to resume its document production."  ECF 99 at 2 (emphasis in original).  As directed by the Court, this motion "cite[s] (page and line) to testimony from Mr. Littlejohn's deposition and . . . additional theories which might implicate the relevance of any continued discovery."  *See id.*

[2]   *See* Ex. 1, Littlejohn Dep. Tr. (Mar. 19, 2024) ("Littlejohn Dep."), at 92:22-93:1, 128:7-10, 201:3-16; 303:5-7.

[3]   *See id.* at 92:22-93:3, 145:14-16, 196:4-15, 302:13-21, 200:3-4, 304:9-18.

1

ProPublica,[4] and in April and July 2022, ProPublica published Mr. Griffin's confidential tax return information on its website.  Consequently, in December 2022, Mr. Griffin brought this action against the Government for its unlawful disclosures of his confidential return information (both to Mr. Littlejohn and to ProPublica), in violation of Section 7431(a)(1).

The Government, for its part, has consistently kept the American public in the dark regarding its unlawful disclosures.  For example, in the summer of 2022, months before Mr. Griffin filed his complaint, the then-IRS Commissioner told the Senate Finance Committee that, "I don't believe it's been indicated that [taxpayer information] was actually stolen from the IRS."[5]  But the statements coming from the IRS were so obviously wrong that, according to Mr. Littlejohn, "everybody mocked them for that."[6]  The Government moved to dismiss Mr. Griffin's complaint in April 2023 based on the same obfuscation, asserting that *the Government was "[w]ithout any clue as to which employee(s) allegedly misappropriated Griffin's confidential information and gave that information to ProPublica*" and that Mr. Griffin could not rule out a "hostile foreign actor" being responsible for the unlawful disclosures.  *See* ECF 23 at 16 (emphasis added).

Mr. Littlejohn's deposition, however, revealed that *the Government knew* that these arguments lacked factual merit *almost a year and a half before moving to dismiss*.  As early as November 2021, Mr. Littlejohn and his lawyer were communicating with the Government about the unlawful disclosures, and by March 2022, Mr. Littlejohn had been interviewed by TIGTA investigators, testified before a federal grand jury, and litigated against the Government's motion

---

[4]   *See id.* at 197:6-13, 198:10-20.
[5]   *See The IRS, the President's Fiscal Year 2023 Budget, and the 2022 Filing Season*: *Hearing before the S. Comm. On Finance*, 117th Cong. (Apr. 7, 2022), 2:29:20-2:29:30 (statement of Charles P. Rettig).
[6]   *See* Littlejohn Dep. at 230:9-15.

to compel additional testimony from him before that grand jury.[7]   Any investigation by the Government—much less a diligent one—would have uncovered the DOJ Public Integrity Unit's ("PIN") investigation of Mr. Littlejohn pursuant to the grand jury exception under Federal Rule of Criminal Procedure 6(e)(3)(A)(i).   Affording the Government every benefit of the doubt, its attorneys must have failed to undertake even the most basic investigation prior to advancing purportedly good-faith arguments before this Court.

Indeed, Mr. Griffin remained in the dark about the Government's longstanding investigation of Mr. Littlejohn—until his deposition, at which Mr. Littlejohn revealed that the Government's "investigative files" contain evidence that is directly relevant to Mr. Griffin's claims and responsive to his discovery requests, but that the Government improperly withheld and even concealed.   For example, Mr. Littlejohn revealed that the Government seized (and concealed the existence of) a journal where Mr. Littlejohn kept his "most private thoughts" about "what had happened with . . . ProPublica" from January 2020 through September 2020,[8] and that the Government failed to produce important communications involving Mr. Littlejohn.

In December 2023, Judge Scola denied the Government's motion to stay discovery and, this week, denied its motion to dismiss Mr. Griffin's unlawful disclosure claim, establishing that Mr. Griffin is entitled to discovery to prove his claim against the Government for its unlawful disclosures to Mr. Littlejohn and to ProPublica.   By way of this motion, Mr. Griffin respectfully asks this Court to put an end to the Government's continued obfuscation and stonewalling, and order the Government to identify and produce the evidence integral to his claims—as any other litigant would be required to do.

---

[7]   *See id.* at 237:12-20, 239:4-12, 245:5-18, 246:14–247:3.
[8]   *See id.* at 276:3-277:21, 278:3-13.

## II.   TIMELINE OF EVENTS REGARDING MR. LITTLEJOHN, THE UNLAWFUL DISCLOSURES, AND DOJ'S REPRESENTATIONS



Ex. 2.

## III.   BACKGROUND

### A.   <u>The Government Fails To Comply With Its Discovery Obligations</u>

The Government has been evading its discovery obligations since the outset of this litigation.  In its initial discovery responses—served almost two years after the Government began investigating Mr. Littlejohn—the Government claimed that, "*if and to the extent* that there is an ongoing investigation […] the information sought is protected from disclosure by the law enforcement investigatory privilege," and refused to provide any meaningful discovery.[9]  In September 2023, after Mr. Littlejohn was charged with disclosing Mr. Griffin's and thousands of other taxpayers' confidential information, *see* ECF 1, *United States v. Littlejohn*, No. 1:23-cr-00343 (D.D.C. Sept. 29, 2023), the Government changed tactics, insisting that all discovery should

---

[9]   *See, e.g.*, Ex. 3, USA Responses to Plaintiff's First Set of Interrogatories, at 6 (objection to Interrogatory No. 2) (emphasis added).

be postponed until after Mr. Littlejohn's October 12, 2023 plea hearing,[10] then, on the eve of that hearing, the Government tried *again* to unilaterally postpone discovery "until [Mr. Littlejohn's] sentencing," which was set for January 29, 2024.[11]

By the end of November 2023—nearly a year into this litigation—the Government had produced a total of six (6) documents, all publicly available.  As Mr. Littlejohn's deposition confirmed, the Government has the documents Mr. Griffin needs to prove his case, and the Government's efforts to avoid its basic discovery obligations—even setting aside its lack of any investigation before responding to Mr. Griffin's complaint—calls into question whether it has litigated this case in good faith.  Indeed, the Government's constant refrain that Mr. Griffin should "sue Mr. Littlejohn" neither satisfies nor excuses the Government's discovery obligations.

### B.   This Court Orders The Government To Begin Producing Documents, And Also Orders Briefing On The Investigatory Privilege And Section 6103

#### 1.   *The Government Is Ordered To Produce Documents*

Mr. Griffin requested a discovery hearing for November 28, 2023, seeking this Court's guidance on, *e.g.*, the "applicability and scope of 26 U.S.C. § 6103," and the "applicability and scope of the law enforcement investigatory privilege"—the Government's purported bases for failing to engage in discovery.  *See* ECF 49 at 1-2.  At that hearing, given that the Government had imposed its own unilateral stay of discovery, the Court inquired "why [hadn't the Government] filed a motion for a stay if you're not producing discovery based on that theory?" *Id.* at 7:3-5.  The Government's counsel responded that the case "completely changed" on September 29, 2023, because they were "not aware of Mr. Littlejohn being under criminal investigation until it was

---

[10]   Ex. 4, Ltr. from S. Sasarak to A. Merton on Oct. 10, 2023.  *See also* Ex. 5, Email from S. Sasarak to A. Merton on October 10, 2023 ("If you wish to chat about this matter, we think any discussion should take place after that plea hearing.").

[11]   Ex. 6, Ltr. from M. Smith to A. Merton on Nov. 21, 2023.

made public"—despite the Government's investigation into Mr. Littlejohn having predated the discovery hearing by *at least two years*. Nov. 28, 2023, H'rg Tr. at 11:6-15.

The Court ordered that "[i]f the Government intends to seek a stay, then it will file a motion to stay" by December 1, 2023. ECF 63 at 2. This Court further ordered, in the spirit of "mak[ing] sure that there isn't any undue delay," *see* Nov. 28 H'rg Tr. at 40:1-2, that the Government begin producing documents related to Mr. Littlejohn's employment status by December 8, 2023, and documents responsive to search terms by December 11, 2023, *see* ECF 63 at 3-4. On December 22, 2023, Judge Scola denied the Government's motion to stay discovery. ECF 79. By then, the Government had violated this Court's order by failing to run Mr. Griffin's proposed search terms by December 11 as directed. *See* ECF 63 at 3-4.

### 2. *Briefing Regarding The Investigatory Privilege*

During the discovery hearing, this Court instructed that "[i]f the Government intends to rely, in any part, on the law enforcement investigatory privilege," it must submit a memorandum discussing (1) "why it believes the privilege exists," (2) "which particular documents or categories of documents it believes it covers," and (3) "whether a traditional privilege log is required for materials covered by the law enforcement investigatory privilege." ECF 63 at 2-3. This issue was fully briefed on December 15, 2023, and is under submission. *See* ECF 77.

### 3. *Briefing Regarding Applicability And Exceptions To Section 6103*

Mr. Griffin noticed another discovery hearing for December 29, 2023, at which the Court ordered the parties to submit briefing "discussing whether there are any provisions in 26 U.S.C. § 6103 which would permit the disclosure of materials responsive to a discovery request." ECF 84 at 1. Mr. Griffin submitted a memorandum of law on January 8, 2024 explaining that Section 6103 does not apply to Mr. Littlejohn's investigative file and that, in any case, Section 6103(h) allows the Government to produce its investigative files to Mr. Griffin in this proceeding. ECF 88. This

issue was fully briefed on January 12, 2024, and is under submission.  *See* ECF 89.

>    *4.*    *The Government's Ongoing Discovery Delays*

This Court also ordered the Government to "respond to all other outstanding discovery requests" from Mr. Griffin's written discovery by January 30, 2024, ECF 84 at 2, yet on January 30 the Government had produced only 380 documents and claimed that it would take two more months to complete its review of even a limited set of responsive materials.[12]  Over the next month, the Government produced an additional 2,854 documents but, because the Government had defied the Court's order to respond to all remaining discovery requests by January 30, 2024, ECF 84, Mr. Griffin noticed a third discovery hearing before this Court.

**C.    The Court Orders The Government To Produce As Many Of Mr. Littlejohn's Documents As Possible Prior To His Deposition**

Following that third discovery hearing, the Court ordered the Government to produce documents with "herculean efforts" up until the date of Mr. Littlejohn's deposition and then submit an affidavit detailing those efforts.  ECF 99 at 2; Mar. 8 H'rg Tr. at 40:12.  The Government produced 331 documents between the March 8 hearing and Mr. Littlejohn's deposition on March 19, 2024.  As of Mr. Littlejohn's deposition, the Government had produced just 3,236 of the 7,388 "priority documents" from the files of Mr. Littlejohn and his direct supervisor.[13]

Following the discovery hearing, this Court entered an order inviting Mr. Griffin to "demonstrate to the Court through Mr. Littlejohn's deposition testimony *why* the Court should require the Government to resume its document production."  ECF 99 at 2.  Mr. Griffin now respectfully submits the instant motion in accordance with this Court's Administrative Order.

---

[12]    *See* Ex. 7, Ltr. from M. Smith to A. Merton on Jan. 30, 2024.
[13]    Ex. 8, Email from M. Smith to P. Fountain on Feb. 20, 2024.

## IV.     REQUESTED RELIEF

Mr. Griffin respectfully requests that the Court compel the Government to produce the following discovery, which it has improperly withheld and/or concealed, and which likely contains crucial evidence necessary to investigate and prosecute Mr. Griffin's claims:

**The Government's Investigative Files** regarding Mr. Littlejohn, including but not limited to:

1.     Mr. ***Littlejohn's electronic journal*** concerning the unlawful inspection and disclosure of Mr. Griffin's and others' confidential return information, which the Government seized but never produced, logged, or otherwise disclosed;

2.     a ***data dictionary*** that Mr. ***Littlejohn provided to ProPublica*** identifying the categories of confidential return information being unlawfully disclosed;

3.     memoranda of ***interviews with IRS personnel*** about their knowledge of Mr. Littlejohn's duties and responsibilities;

4.     records of ***information and communications*** Mr. ***Littlejohn prepared, sent, or received*** about and including the confidential return information he inspected and disclosed;

5.     ***proffer memoranda*** that include a description of Mr. Littlejohn's motivations and actions, including his communications with ProPublica, his knowledge about IRS systems, and the database queries Mr. Littlejohn used to inspect and disclose Mr. Griffin's return information;

6.     ***search warrants***, including corresponding affidavits, issued in connection with the investigation of Mr. Littlejohn;

7.     ***pleadings and corresponding court order(s)*** regarding the United States' motion to compel Mr. Littlejohn's testimony in grand jury proceedings in 2022;

8.     ***communications between*** Mr. ***Littlejohn*** and his representatives, on the one hand, ***and the United States***, on the other hand; and

9.     ***communications between*** Mr. ***Littlejohn and ProPublica***.

**Communications (including emails, texts, and instant messages)** between Mr. Littlejohn and each of the following IRS personnel:

- **Paul Wight**, Mr. Littlejohn's Supervisor at the IRS (*see* Littlejohn Dep. at 93:10-19, 301:4-11);

- **Cody Thierry**, Paul Wight's deputy (*id.* at 106:3-15);

- **Marsha Coleman**, IRS Contracting Officer that Mr. Littlejohn would "go to when [he] needed access to certain things" (*id.* at 107:16-108:6);

- **Nanette Downing**, Director of Identity Assurance (*id.* at 94:13-95:2);

- **Rene Schwartzman**, Director of Identity Assurance (*id.* at 109:2-12);

- **Adrienne Smith**, IRS employee who worked with Mr. Littlejohn to introduce a chat bot to help with the project Mr. Littlejohn worked on (*id.* at 104:9-105:1);

- **Mark Halpin**, IRS employee with whom Mr. Littlejohn worked on fraud issues with the IRS (*id.* at 105:2-21);

- **Brandi Warren**, IRS employee who Mr. Littlejohn trained (*id.* at 103:11-104:1);

- **Annelise Fabian,** IRS contractor who worked directly with Mr. Littlejohn; had, on information and belief, unfettered access to return information like Mr. Littlejohn; and with whom Mr. Littlejohn had a romantic relationship at the time of his unlawful inspection and disclosure of Mr. Griffin's confidential return information.

## V.     ARGUMENT

### A.     <u>This Court Should Order The Government To Produce Its Investigative Files</u>

The Government continues to improperly withhold—and conceal the contents of—its investigative files regarding its now-concluded investigation into Mr. Littlejohn's criminal conduct.  According to the Government, Section 6103 and the investigatory privilege prohibit the Government from disclosing its investigative files to Mr. Griffin in this case.  That is wrong.

Government agencies are "subject to the same discovery rules as private litigants," which provide that "parties may discover any non-privileged matter relevant to the 'claim or defense of any party.'" *SEC v. Merkin*, 283 F.R.D. 689, 696 (S.D. Fla. 2012); *Lane v. Cap. Acquisitions*, 242 F.R.D. 667, 669 (S.D. Fla. 2005) (quoting Fed. R. Civ. P. 26(b)(1)).  The Government's investigative files, and communications between Mr. Littlejohn and certain IRS employees, contain information that is critical to Mr. Griffin's claims and unavailable elsewhere.  Accordingly, and in accordance with this Court's Administrative Order, Mr. Griffin moves for an order

compelling the production of (1) the Government's investigative files regarding the investigation of Mr. Littlejohn; and (2) emails, texts, and instant messages between Mr. Littlejohn, on the one hand, and a limited number of IRS personnel, on the other hand, who were identified in Mr. Littlejohn's deposition or otherwise have information relevant to Mr. Griffin's claims—which includes information about Mr. Littlejohn's roles and responsibilities at the IRS.

*1.*   *Mr. Littlejohn's Testimony Confirms That The Government's Investigative Files Contain Information Critical To Mr. Griffin's Claims*

Mr. Littlejohn's testimony revealed the importance and existence of critical evidence that the Government improperly withheld, for example, Mr. Littlejohn's electronic journal containing a detailed account of his "most private thoughts" regarding "this case," including his observations from his time at the IRS.[14]  Mr. Littlejohn's deposition testimony also provided critical evidence that he functioned as a *de facto* employee of the IRS, among other reasons:

- Booz Allen did not provide Mr. Littlejohn an office; rather, the IRS provided him an office at "IRS headquarters" and directed him to work there four out of the five days a week and from home on the fifth (*see* Littlejohn Dep. at 109:20-110:13);

- The IRS directed Mr. Littlejohn to arrive at IRS headquarters at a particular time in the mornings, normally between 7:45 am and 9:00 am (*id.* at 301:1-11, 117:4-11);

- Mr. Littlejohn had an IRS supervisor who directed his work, and Mr. Littlejohn also reported to other IRS employees, including "other directors of Identity Assurance, and […] other IRS analysts on the team" (*id.* at 301:4-11, 94:4-8);

- The IRS provided Mr. Littlejohn an IRS email address and an IRS laptop that were indispensable to his job (*id.* at 111:13-22, 112:15-21); and

- Mr. Littlejohn "managed" IRS employees, including "[f]unctionally" "acting like a manager for these people" and "task[ing]" them with assignments (*id.* at 121:4-20).

The Government is withholding memoranda of interviews of IRS personnel about their knowledge of Mr. Littlejohn's duties and responsibilities when he worked at the IRS,[15] which would

---

[14]   *See* Littlejohn Dep. at 276:3-277:21, 278:3-13.
[15]   *See* Ex. 9, TIGTA Privilege Log, Entry 2.

10

corroborate this testimony and establish, by the Government's own knowledge and admission, Mr. Littlejohn was a *de facto* IRS employee.[16]  The investigative files also contain information—such as memoranda and documents from Mr. Littlejohn's proffers[17]—which will show whether the Government violated Section 7431(a)(1) by disregarding the requirements of Section 6103(n) and providing Mr. Littlejohn unfettered access to tax returns, and by failing to employ appropriate data-security measures.[18]

Separately, the Government's investigative files are necessary to test the veracity of the Government's submissions surrounding Mr. Littlejohn's criminal plea agreement and sentencing. For example, the Government filed a Factual Statement to support Mr. Littlejohn's plea agreement, which claims that he used "two virtual machines [… and then…] promptly destroyed these machines after he used them to steal the data from the IRS."[19]  In reality, however, Mr. Littlejohn testified that he ██████████████████████████[20]  Instead, Mr. Littlejohn confirmed that he ███████████████████████████████████ to steal Mr. Griffin's and thousands of others' tax returns ████████████████████████.[21]  Mr. Littlejohn's deposition also confirmed that the IRS ████████████████████.  *See id.* at 200:18-201:16.

---

[16]  The Government's attempt to elicit Mr. Littlejohn's conclusion that he was an employee of Booz Allen rather than the IRS, *see* Littlejohn Dep. at 307:5-308:14, is of no moment because the question of whether Mr. Littlejohn was an "employee of the United States" is a fact intensive inquiry, *see* ECF 108 at 10.

[17]  The Government waived any investigative privilege over these memoranda because they were made available to Mr. Littlejohn for review.  *See* Littlejohn Dep. at 268:2-11.

[18]  *See, e.g., id.*, at 267:6-13 ("I think that the mere description of events and, you know, how I went about the crime gave them enough to … try to prevent similar things in the future.").

[19]  *See* ECF 9, *Littlejohn*, No. 1:23-cr-00343 ¶ 11 (D.D.C. Oct. 12, 2023).

[20]  ████████████████████████████████████████████████████████████ ███████████████████    ████████████████████████████████████████████ ███████████████████████████████████████████████████████████████.

[21]  *Compare* ECF 9, *U.S. v. Littlejohn*, No. 1:23-cr-00343 ¶ 11 (D.D.C. Oct. 12, 2023), *with* Littlejohn Dep. at 198:22-199:9 (████████████████████████████).

<u>2.</u>    <u>*The Government's Privilege Logs Fail To Comply With The Applicable*</u>
<u>*Rules*</u>

The Government's investigative file privilege logs are facially insufficient to withhold the investigative files because they do not "identify each document and the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is properly claimed." *TIC Park Ctr. 9, LLC v. Cabot*, 2017 WL 9988744, at *4 (S.D. Fla. June 1, 2017) (quotation omitted).  Specifically, the Government's privilege logs often omit "the type of document," "general subject matter of the document," "the date," and "such other information as is sufficient to identify the document . . . including, where appropriate, the author, addressee, and any other recipient."  S.D. Fla L.R. 26.1(e)(2)(B)(ii)(a).

Both logs fail to sufficiently "describe the nature of the documents" to "enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5).  TIGTA's privilege log omits dates, authors, addressees, recipients, file types, and any meaningful subject matter description.  The first entry, labeled simply "TIGTA investigative file," purports to rely on a blanket invocation of investigatory privilege and "Section 6103" over "various" documents concerning Mr. Littlejohn's unlawful disclosures, and are being withheld over improper, blanket assertions of privilege.

**Excerpt Of The Government's TIGTA Privilege Log[22]**

| No. | Bates Range | Document Type | Subject Matter | Document Date | Author and Recipient | Privilege |
|---|---|---|---|---|---|---|
| 1 | | TIGTA investigative file (including Form 2028R, Report of Investigation) | Unauthorized disclosure investigation of Littlejohn | Various | Various | I.R.C. § 6103, investigatory Privilege |

PIN's privilege log is likewise devoid of critical information: for example, an entire category of materials is labeled "Documents about a Twitter account," and it generally does not

---

[22]  Ex. 9, TIGTA Privilege Log.

list the dates necessary to identify when material was seized.[23]  Because the Government has not met its burden as to any applicable privileges, it should be ordered to produce the material.

### 3. Section 6103 Does Not Prohibit The Government From Disclosing Its Investigative Files To Mr. Griffin

The Government claims that Section 6103 prohibits it from disclosing its investigative files to Mr. Griffin in this case.  Not so.  Section 6103(h)(4) provides an exception that allows the Government to disclose its investigative files to Mr. Griffin in this litigation, as explained in detail in Mr. Griffin's Section 6103 brief.  *See* ECF 88 at 4-7; 26 U.S.C. § 6103(h)(4)(A); *see also* DOJ Criminal Tax Manual, Updated 2022, 7 n.6 ("Sections 6103(h)(4) […] permit[s] the Department to disclose such returns or return information in civil or criminal judicial proceedings relating to tax administration[.]").  Mr. Griffin is suing the Government for violating Section 6103, and Congress authorized the disclosure of return information in precisely these circumstances.

But the Court need not even reach that exception because Mr. Littlejohn's testimony confirms that Section 6103 does not apply.  Section 6103 does not apply to the Government's investigative files in this case because the materials were collected as part of a DOJ investigation, not a TIGTA investigation.  ECF 88 at 3-4, *see also* DOJ Criminal Tax Manual (2022), 8 n.7 ("TIGTA does not have authority to issue a summons and does not conduct 'administrative' investigations related to potential tax violations.").  In this case, as Mr. Griffin first learned from Mr. Littlejohn's testimony, DOJ has led the criminal investigation of Mr. Littlejohn from as early as December 2021.[24]  As a result, all investigative materials the Government subsequently collected are neither return information under Section 6103 nor subject to its restrictions.  *See id.*; *see also Baskin v. United States*, 135 F.3d 338, 342-43 (5th Cir. 1998) (material that IRS Special

---

[23] *See* Ex. 10, PIN Privilege Log.
[24] *See* Littlejohn Dep. at 239:2-13, 249:21-250:2, 294:11-295:19.

Agent obtained during grand jury investigation was not "return information").  The mere involvement of TIGTA does not render information collected as part of a DOJ investigation return information under Section 6103.  *See Ryan v. United States*, 74 F.3d 1161, 1163 (11th Cir. 1996). Thus, the Government's claim that Section 6103 applies to its investigative files is wrong.

### 4.     *The Law Enforcement Investigatory Privilege Does Not Apply*

The Government is also withholding materials on the basis of the investigatory privilege, which it claims prohibits disclosure of all seven categories on the PIN log, along with TIGTA's "investigative file," two proffer memoranda (which may or may not be the same memoranda referenced in the PIN log), and some ambiguous mix of "investigative notes, evidence, digital evidence analysis reports."  These investigatory privilege claims fail.

The investigatory privilege is a "qualified" privilege that is intended "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation."  *Fed. Election Comm'n v. Rivera*, 335 F.R.D. 541, 547-48 (S.D. Fla. 2020) (Goodman, M.J.); *see also* ECF 71.  The Government bears the burden to "show that the documents contain information that the law enforcement privilege is intended to protect," *In re The City of N.Y.*, 607 F.3d 923, 944 (2d Cir. 2010), and to determine whether the burden has been met, courts treat each item independently, analyzing the facts and circumstances "with an eye towards disclosure," *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999).

Here, the Government has tried to minimize disclosure and shirk its burden by improperly advancing a blanket privilege claim over all materials tied to the investigation of Mr. Littlejohn. The Government has refused to produce *anything at all* from PIN or TIGTA, suggesting its misperception that anything an investigatory agency collected or created is, by definition,

privileged.  *See J. H. Rutter Rex Mfg. Co. v. N. L. R. B.*, 473 F.2d 223, 234 (5th Cir. 1973) ("[T]he qualified privilege we here recognize is not a blanket privilege that arises solely from the fact that the information being sought is investigatory matter in the hands of an investigatory or prosecutorial agency.").

In any event, the Government fails on the merits of the privilege assertions.  Courts, including this one, apply a set of non-exhaustive factors for determining "whether the qualified . . . privilege protects against disclosure or whether it must give way" to the search for truth, *Rivera*, 335 F.R.D. at 547-48, and those factors weigh heavily in favor of disclosure here.

*First*, the privilege is *limited to* "*files relating to ongoing criminal investigations*."  *See Sirmans v. City of S. Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980) (emphasis added); *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 571 (5th Cir. 2006) ("*[T]he privilege lapses either at the close of an investigation or at a reasonable time thereafter.*" (emphasis added)).  Here, because the DOJ has represented to Mr. Griffin that there is no longer an ongoing criminal investigation, the Government cannot meet its burden to establish the privilege.

*Second,* the Government has not shown that disclosure will "thwart governmental processes by discouraging citizens from giving the government information," or that it will have an "impact upon persons who have given information of having their identities disclosed."  *Rivera*, 335 F.R.D. at 547-48.  The Government has not claimed that the investigative files would reveal identities of confidential or nonconfidential informants.  Instead, the Government explicitly noted that "Mr. Littlejohn is, and remains, the primary source of the proffers."[25]

*Third*, production to Mr. Griffin will not increase "the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure."  *Rivera*, 335

---

[25]  Ex. 11, USA Supp. Resp. to Pls' Third Requests for Production, at n.1 (Jan. 30, 2024).

F.R.D. at 548.  Notably, the Government's misconduct here stems from its *failure* to evaluate and improve its programs.  Accountability and remediation would reassure, rather than alarm, taxpayers.  Mr. Griffin's actions may even be spurring, rather than chilling, the Government's self evaluation.  Similarly, the Government has not claimed that "any interdepartmental disciplinary proceedings have arisen or may arise from the investigation," nor has it claimed that sensitive law enforcement personnel data is at stake.  *Id.*

*Fourth*, much of "the information sought is factual data" rather than "evaluative summary." *Id.*  Screenshots of communications between Mr. Littlejohn and ProPublica do not reveal law enforcement technique, nor do Mr. Littlejohn's Twitter data or other online account information.[26]

*Fifth*, "the importance of the information sought" to Mr. Griffin's case clearly weighs in favor of disclosure.  *Rivera*, 335 F.R.D. at 548; *see supra* at 9-11.  Mr. Griffin alleged that the IRS provided more access than necessary to Mr. Littlejohn; Entry 3 of the TIGTA log contains the "database queries and the code used" and should confirm that the IRS allowed Mr. Littlejohn to access tax returns at will, ECF 55 ¶¶ 45-46, 56; Littlejohn Dep. at 93:2-3.  Mr. Griffin also alleged that the IRS's lack of safeguards to protect against unlawful inspection caused Mr. Littlejohn's disclosures to ProPublica, *see* ECF 55 ¶¶ 52, 56, and the Government's declaration provides that the withheld information includes the "details of IRS security audit, logging, and monitoring systems."[27]  This "integral" information should be disclosed because "plaintiff's suit is non-frivolous and brought in good faith."  *Rivera*, 335 F.R.D. at 546, 548; *see* ECF 108 (denying the Government's motion to dismiss Mr. Griffin's Section 7431 claim).

*Finally*, the information sought is not "available through other discovery or from other

---

[26]  *See* Ex. 10, PIN Privilege Log, Entries 1, 2, 6.
[27]  Ex. 12, Decl. of TIGTA Special Agent in Charge Erik Wood, at ¶ 8.

sources," *Rivera*, 335 F.R.D. at 548, because the Government *seized* Mr. Littlejohn's documents.

**5.      *The Privacy Act Does Not Prohibit Disclosure Of PIN's Documents***

The Government also purports to withhold every responsive document in PIN's possession by claiming that the Privacy Act, 5 U.S.C. § 552a, prohibits disclosure of records maintained in the Criminal Division's system of records.[28]  But the Privacy Act is not a shield from discovery, nor does it override the Government's civil discovery obligations under the federal rules.  To the contrary, Section 552a(b)(11) expressly permits government agencies to release information "pursuant to the order of a court of competent jurisdiction," particularly where the need for the disclosure outweighs the potential harm to the subject of the disclosure.  *See Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1447 (11th Cir. 1984).[29]

Here, the balance weighs heavily in favor of disclosure.  Mr. Littlejohn testified at his deposition and has admitted his wrongdoing, which mitigates any hypothesized harm to him. Indeed, he expressed that, in keeping his journal and then voluntarily providing it to the Government, he "wanted to demonstrate, you know, honesty . . . [I]f I'm coming forward, I'm saying all these things . . . here's this, you know, flash drive with all my most private thoughts; you can take a look at it; it's fine."  Littlejohn Dep. at 278:8-13.[30]  On the other hand, the Government's investigative files are highly relevant to each of Mr. Griffin's theories of liability, *see supra* at 9-11, and, unlike in *Perry*, the Government's blanket withholding has rendered the

---

[28]   *See* Ex. 10, PIN Privilege Log; Ex. 11, USA Supp. Resp. to Pls' Third Requests for Production, at Obj. 6 (citing 5 U.S.C. § 552a(j)(2), (k)(2) and 28 C.F.R. § 16.91 as exempting records from disclosure).

[29]   Consistent with *Perry*'s recognition that the Privacy Act does not prohibit discovery, most courts assess a request for documents that are subject to the Privacy Act only under Federal Rule of Civil Procedure 26.  *See, e.g.*, *Laxalt v. McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987).

[30]   When statutory privacy restrictions apply, "traditional devices as protective orders and in camera inspection offer reliable means with which to give effect to liberal discovery principles without threatening the interests protected by statutory publication bans."  *Laxalt*, 809 F.2d at 889.

17

critical evidence otherwise inaccessible, 734 F.2d at 1447 (denying request for production of Social Security Administration testimony because party "could have utilized normal discovery procedures to obtain [the requested] information").  Notably, the United States and the public at large will benefit by harnessing the disinfectant power of sunlight, not by stonewalling discovery.  Accordingly, this Court should order disclosure of the investigative files.

**B.**      **This Court Should Order The Government To Produce Communications Between Mr. Littlejohn And A Limited Number Of IRS Personnel**

Mr. Griffin's Second Amended Complaint alleges three distinct theories of liability under Section 7431(a)(1):  *First*, Mr. Littlejohn was himself an "employee" of the United States within the meaning of Section 7431(a)(1) when he unlawfully inspected and disclosed Mr. Griffin's confidential tax return information.  *See* RFPs 48-51, 88-89.  *Second*, IRS employees unlawfully disclosed Mr. Griffin's confidential tax return information to Mr. Littlejohn in violation of Section 7431(a)(1) by failing to observe the statutory requirements for disclosing return information to IRS contractors under Section 6103(n).  *See* RFPs 58-59, 62-63.  *Third*, IRS employees failed to comply with the IRS's own data-security requirements, which led to the unlawful disclosure of Mr. Griffin's confidential return information to ProPublica.  *See* RFPs 16-18. Mr. Griffin issued Requests for Production of Documents seeking documents regarding each theory of liability.

In response, the Government unliterally limited its ESI review to two record custodians: Mr. Littlejohn and Mr. Paul Wight.  When Mr. Griffin made the limited request that the Government run search terms across four additional individuals whom the Government *itself* identified as possessing relevant information, so that the hit report could inform the discussion of whether those individuals may be appropriate custodians, the Government flatly refused, asserting

that it would be "unduly burdensome to require the IRS to pull ESI and run search terms."[31]

Mr. Littlejohn's deposition testimony revealed, however, that Mr. Littlejohn regularly communicated—by email, Skype (or other instant messaging services), and sometimes by text messages[32]—with the IRS employees identified above, and Mr. Littlejohn's testimony and the Government's document production further indicate that these employees are likely to have information relevant to whether Mr. Littlejohn was a *de facto* employee of the IRS, whether the IRS violated Section 7431 by failing to adhere to the statutory requirements under Section 6103(n) when it provided Mr. Littlejohn unfettered access to each and every tax return filed with the IRS over the past 15 years, and whether IRS employees violated Section 7431(a)(1) by failing to employ adequate data security safeguards over confidential tax return information[33]

Mr. Griffin has furthered tailored his requests following Mr. Littlejohn's deposition, and to minimize the burden of search term review at this time, respectfully requests that the Court order the Government to produce emails, instant messages, and text messages within its possession, custody or control (that is, from the IRS's files, Mr. Littlejohn's seized cellphone, or otherwise), between Mr. Littlejohn, on the one hand, and the limited number of IRS personnel listed above on pages 8-9.

This Court should grant Mr. Griffin's request, in accordance with its Administrative Order, because the Federal Rules permit broad discovery "regarding any nonprivileged matter that is relevant . . . and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and "a party must

---

[31] Ex. 13, Email from M. Smith to P. Fountain on Mar. 6, 2024; *see also* Ex. 14, USA Am. Resp. to Interrogatories 1-5 & 7-9 and Resp. to Interrogatories 12-20, at ROG 18 and 20 (Jan. 15, 2024); Ex. 15, USA Am. Resp. to Interrogatories 6 & 10 and Resp. to Interrogatories 11 & 21, at ROG 11 (Jan. 8, 2024).

[32] *See* Littlejohn Dep. 95:3-6 and 100:3-17.

[33] *See id.* 105:18-21 ("Q: Okay. [… A]ll these people, you're communicating with them about your job, correct?  A: Yea. And their job.").

produce documents in response to a request for production where those documents are 'in the responding party's possession, custody, or control," Fed. R. Civ. P. 34(a)(1). A party asserting an undue burden defense, as the Government does here, "must explain specifically how the proposed discovery is unduly burdensome." *See All Moving Servs., Inc. v. Stonington Ins. Co.*, 2012 WL 718786, at *5 (S.D. Fla. Mar. 5, 2012). The Government's rote assertions of burden cannot deny Mr. Griffin the discovery necessary to pursue his case, *especially* given the strong relevance of the communications—confirmed by Mr. Littlejohn's deposition testimony.

## VI. CONCLUSION

For the foregoing reasons, the Court should grant the relief requested herein.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)</u>

Undersigned counsel conferred with counsel for Defendants by phone on April 18, 2024 and by email on April 19, 2024, in a good-faith effort to resolve by agreement the issues raised herein, but were unable to reach any resolution of the issues.

By: */s/ Jason D. Sternberg*
Jason D. Sternberg
Fla. Bar No. 72887
jasonsternberg@quinnemanuel.com

Dated: April 24, 2024        Respectfully submitted,

By: *Jason D. Sternberg*
William A. Burck (*pro hac vice*)
Derek L. Shaffer (*pro hac vice*)
Alexander J. Merton (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
ajmerton@quinnemanuel.com

John F. Bash (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
johnbash@quinnemanuel.com

Jason D. Sternberg (Florida Bar No. 72887)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
(305) 402-4880
jasonsternberg@quinnemanuel.com

Christopher D. Kercher (*pro hac vice*)
Peter H. Fountain (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue, 22nd Floor,
New York, New York 10010
(212) 849-7000
christopherkercher@quinnemanuel.com
peterfountain@quinnemanuel.com

*Counsel to Plaintiff Kenneth C. Griffin*

21

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, on this 24th day of April, 2024, I caused a copy of the foregoing

document to be filed with the Clerk of Court using the CM/ECF electronic filing system, which

will send notification to all counsel of record.

By: *<u>/s/ Jason D. Sternberg</u>*
Jason D. Sternberg
Fla. Bar No. 72887
jasonsternberg@quinnemanuel.com