UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:22-cv-24023-SCOLA/GOODMAN

KENNETH C. GRIFFIN,

    Plaintiff,

    v.

INTERNAL REVENUE SERVICE and U.S. DEPARTMENT OF THE TREASURY,

    Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY PURSUANT TO THE COURT'S ADMINISTRATIVE ORDER [ECF 99]**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................1

II. ARGUMENT .............................................................................................................................3

    A. Mr. Griffin's Motion Seeks Information Proportional To The Needs Of The Case And Is Minimally Burdensome ..................................................................3

    B. The Government Fails To Carry Its Burden With Respect To The Investigative Files ........................................................................................................5

        1. The Government Fails To Demonstrate The Applicability Of The Investigative Privilege ........................................................................................6

        2. Section 6103 Does Not Prohibit Disclosure Of The Investigative Files ...............................................................................................................8

        3. The Privacy Act Does Not Prohibit Disclosure Of The Investigative Files ...............................................................................................................9

        4. The Government Has Waived Privilege Over The Investigative Files ...............................................................................................................9

III. CONCLUSION ......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## **Cases**

*Adult Advoc. & Rep. v. Brookdale Senior Living, Inc.*,
   2018 WL 1083493 (S.D. Fla. Feb. 27, 2018) (Goodman, J.) ...................................................... 4

*Am. Mod. Select Ins. Co. v. Sutherland*,
   2013 WL 1767827 (N.D. Ala. Apr. 18, 2013) .......................................................................... 9

*Bautech USA, Inc. v. Resolve Equipment, Inc.*,
   2024 WL 1929486, at *2 (S.D. Fla. May 2, 2024) ................................................................. 10

*In re Poly. Carpet Antitrust Litig.*,
   181 F.R.D. 680 (M.D. Ga. 1998) .............................................................................................. 6

*F.TC. v. Timeshare Mega Media & Mktg. Grp., Inc.*,
   2011 WL 6102676 (S.D. Fla. Dec. 7, 2011) ............................................................................ 6

*Kahn v. United States*,
   2015 WL 3644628 (S.D. Fla. June 10, 2015) .......................................................................... 6

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
   2012 WL 4192987 (S.D. Fla. Sept. 18, 2012) (Scola, J.) .................................................... 2, 3

## **Statutes & Rules**

Fed. R. Civ. P. 26(b)(5) ..................................................................................................................... 9

## **Other Authorities**

DOJ Criminal Tax Manual (2022) ...................................................................................................... 8

Mr. Griffin[1] respectfully submits this reply in further support of his Motion to Compel Discovery Pursuant to the Court's Administrative Order (ECF 111, "Motion").

## I. PRELIMINARY STATEMENT

On April 24, 2024, Mr. Griffin filed his Motion to Compel at the Court's invitation to "demonstrate…why the Court should require the Government to resume its document production" following Mr. Littlejohn's deposition. ECF 99 at 2 (emphasis in original). The Motion seeks two narrow categories of evidence *already collected and processed* by the Government: first, Mr. Littlejohn's direct "To/From" communications with nine supervisors and coworkers at the IRS, all of whom were identified by Mr. Littlejohn during his deposition;[2] and second, materials in the Government's investigative files from its criminal investigation of Mr. Littlejohn. The Motion explains in detail why the evidence Mr. Griffin seeks is relevant and necessary to prove his claim that the Government unlawfully disclosed his confidential tax information in violation of Section 7431(a)(1)—a claim that Judge Scola already determined should proceed through discovery when he rejected the Government's motion to stay discovery and motion to dismiss Mr. Griffin's claim.

In its Opposition (ECF 137, "Opp'n"), the Government offers up a host of red herrings and distractions, such as overblown descriptions of its discovery efforts to date and entirely misplaced accusations that Mr. Griffin is seeking to "investigate the investigators." Opp'n at 1. Stripped of its bluster, the Opposition rests entirely on spurious claims of burden and unsupported invocations of privileges to which the Government is not entitled or simply do not apply.

The Government's continued efforts to shirk its discovery obligations come as no surprise to Mr. Griffin. Since he first brought this action in December 2022, the Government has at every

---

[1] Defined terms have the meanings provided in Mr. Griffin's Motion, ECF 111.
[2] Of the nine IRS employees, two were responsible for directing and supervising Mr. Littlejohn's work, three determined the scope of his access to confidential information, and Mr. Littlejohn worked closely with, supervised, and/or trained the other four. *See* Mot. at 8-9, 19.

1

turn sought to hinder Mr. Griffin's efforts to pursue his claims through a fair discovery process. The Government initially claimed (falsely) that it was "without any clue" as to who could have misappropriated Mr. Griffin's confidential tax return information. When criminal charges were filed and it became evident the Government knew all along that it was Mr. Littlejohn that provided Mr. Griffin's confidential information to ProPublica, the Government abdicated its own culpability by disavowing and exclusively blaming Mr. Littlejohn while it continued to play the same game: dragging its feet for months and producing a total of six publicly available documents, raising specious objections to reasonable interrogatories, and blowing through numerous court-ordered deadlines without justification or even efforts at meaningful explanation. The Government's Opposition is an unfortunate continuation of the same strategy.

While Mr. Griffin's Motion is targeted to seek only the most relevant material, the Government is withholding these critical documents based on its false assertion that they "have no relevance to Plaintiff's [Section] 7431[(a)(1)]" claim. Opp'n at 5; *but see Manno v. Healthcare Revenue Recovery Grp., LLC*, 2012 WL 4192987, at *3 (S.D. Fla. Sept. 18, 2012) (Scola, J.) ("[I]nformation is relevant if it is germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible evidence."). This argument is deeply flawed and is addressed at length in Mr. Griffin's Motion. But it is worth noting here that Judge Scola's Order denying the Government's motion to dismiss Mr. Griffin's Section 7431(a)(1) claim sets out relevant factors that go to establishing Mr. Littlejohn's status as an IRS employee, including "the IRS's supervision and control of Littlejohn's work," and whether the "IRS directly managed the scope and purpose of Littlejohn's daily tasks and projects, making sure he completed his training, monitoring his technical performance, controlling his access to IRS data and confidential information, and ultimately retaining the authority to reprimand or terminate him." ECF 108 at 6. There can be no

serious argument that Mr. Littlejohn's communications with his supervisors, close coworkers, and colleagues who determined the scope of his work and access to confidential IRS information, or memoranda of interviews of those individuals and Mr. Littlejohn himself, are not "germane" and "conceivably helpful" in the determination of the factors articulated by this Court.

The Government made clear in its response to Mr. Griffin's Motion what its real problem is with his discovery requests: the Government does not believe that Mr. Griffin's claims "have merit" and wishes he would instead "sue Mr. Littlejohn." Opp'n at 1-2. But the Government does not get to determine whether Mr. Griffin's claims have "merit"; the Court does. And the Court has already determined that Mr. Griffin's Section 7431(a)(1) claim should proceed. Mr. Griffin therefore respectfully asks that the Court hold the Government to its discovery obligations—the same obligations that apply to any other litigant in this Court—and order the Government to produce the narrow categories of information sought in the Motion.

**II.    ARGUMENT**

   **A.    Mr. Griffin's Motion Seeks Information Proportional To The Needs Of The Case And Is Minimally Burdensome**

In asserting that the evidence Mr. Griffin seeks has "no relevance to Plaintiff's [Section] 7431" claim, Opp'n at 5, the Government misapprehends the applicable standard and fails to meet its "burden to demonstrate specifically how the [discovery] request is unreasonable or not relevant," *Manno*, 2012 WL 4192987, at *3. As detailed in Mr. Griffin's Motion, the Government's investigative files and the limited set of communications between Mr. Littlejohn and his specified IRS colleagues are highly relevant to Mr. Griffin's theories of liability. Mot. at 9-11, 18-19. Mr. Littlejohn's journals, memoranda of interviews with IRS personnel, and specified communications would shed light on the fact that "the IRS directly managed the scope and purpose of Littlejohn's daily tasks and projects." ECF 108 at 6. Given the relevance of these documents,

3

and the "conjoined" nature of proportionality and relevance, *Adult Advoc. & Representation v. Brookdale Senior Living, Inc.*, 2018 WL 1083493, at *6 (S.D. Fla. Feb. 27, 2018) (Goodman, M.J.), the Government's asserted bases for withholding the evidence should be rejected.

*First*, the Government asserts that "[n]one of the documents produced support any argument that Mr. Littlejohn was an IRS employee," Opp'n at 7, but this is mere *ipse dixit* and simply wrong: the Government has produced documents that support Mr. Griffin's claim that Mr. Littlejohn was an "employee of the United States."[3] Moreover, memoranda of interviews with IRS personnel *about Mr. Littlejohn's duties and responsibilities at the IRS* are facially relevant, regardless of the Government's view of its prior production.

*Second*, the Government looks to hang its hat on the lack of documents used during Mr. Littlejohn's deposition. *See, e.g.*, Opp'n at 8. But whether a document is marked as an exhibit in one deposition is obviously neither a fair nor sensible measure of relevance. And it was the knowledge gained from reviewing the incomplete set of Mr. Littlejohn's documents that enabled Mr. Griffin to elicit testimony from Mr. Littlejohn directly supporting his claim.[4]

*Finally*, the Government's other chief argument—that it would be burdensome to provide communications from nine IRS employees, Opp'n at 10-11—is of no moment. As an initial matter, it ignores that Mr. Griffin is simply seeking Mr. Littlejohn's direct "To/From" communications

---

[3] For example, documents show that IRS employees supervised and directed Littlejohn's day-to-day work; that his place of work was at IRS headquarters and other IRS locations; that IRS employees treated Mr. Littlejohn interchangeably with other IRS employees; and that Mr. Littlejohn regularly did the work of IRS employees by quality checking their work.

[4] Among other things, Mr. Littlejohn testified that: (i) his office was located at IRS headquarters; (ii) his direct supervisor was an IRS employee; (iii) the IRS controlled his tasks and projects and the scope of his work; (iv) the IRS controlled his access to IRS hardware required to do his job as well as his access to confidential tax return information at the IRS; and (v) the IRS determined when he would report for work and where and was involved in dictating his time off. *See* ECF 119-1 at 109:20-110:8; 301:1-11, 117:6-9; 312:19-313:3; 93:10-94:3, 319:14-22, 301:1-11; 105:18-21, 110:15-22; 111: 13-16; 108:1-6.

4

with specified employees, which the Government *already collected and processed*, and which would screen out e-mail blasts and other irrelevant materials. There is no need for some "multistep process" that begins with the "identification of custodians" and requires an "expansive search" that involves "delivering ESI in a usable format outside the agency." Opp'n at 10-11; ECF 137-4 at ¶ 2. All of this supposedly burdensome work is already complete, and the Government need only review documents *already collected from Mr. Littlejohn's files and loaded into a Relativity database*, *see* ECF 137-5 ¶ 6—this minimal burden, which any litigant would have to undertake, is heavily outweighed by their relevance and Mr. Griffin's need for the information.[5] While the Government claims that, as an "example of how burdensome this process has been," 14 attorneys spent 118.75 hours over 11 days to review documents (*see* Opp'n at 10-11; ECF 137-5 ¶ 12)—that ultimately amounts to *45 minutes per attorney per day*, and at that rate, it is no surprise that the Government believes it would take 18 months to review a hypothetical 50,000 documents. *See id*.

**B.** **The Government Fails To Carry Its Burden With Respect To The Investigative Files**

Information in TIGTA's and PIN's investigative files[6]—such as memoranda of interviews with IRS personnel about Mr. Littlejohn's duties—is both directly relevant and proportional to the needs of this case. *See supra* at Section II.A. The Government makes no burden argument as to these files, and while it raises three different privileges, it fails to establish that any apply.

---

[5] In the event that the Court is not inclined to order the Government to produce Mr. Littlejohn's communications with all nine IRS personnel, Mr. Griffin requests that the Government provide Mr. Littlejohn's communications with (i) Paul Wight, (ii) Marsha Coleman, (iii) Nanette Downing, (iv) Rene Schwartzman, and (v) Cody Thierry.

[6] The Government's asserts that Mr. Griffin "waived the right to dispute the sufficiency of PIN's responses … and PIN's privilege log" under Local Rule 26.1(g)(2)(A)(i). Opp'n at 4. This is wrong. At the time the Government served these responses and the PIN log, Mr. Griffin had already challenged the Government's assertions of Section 6103 and the investigatory privilege, on which the PIN log relied. *See* ECF 71; ECF 88.

> 1. **The Government Fails To Demonstrate The Applicability Of The Investigative Privilege**

The "proponent of the law-enforcement privilege"—not Mr. Griffin—"bears the ultimate burden of demonstrating its applicability." *F.T.C. v. Timeshare Mega Media & Mktg. Grp., Inc.*, 2011 WL 6102676, at *4 (S.D. Fla. Dec. 7, 2011). The Government has failed to carry its burden, for two reasons: it does not contend that the privilege applies to the material Mr. Griffin seeks, and it fails to address the relevant factors courts analyze in assessing this "qualified" privilege.[7]

*First*, the Government fails to meet its burden to "demonstrate that the documents contain information that the law enforcement privilege is intended to protect." *Kahn v. United States*, 2015 WL 3644628, at *2 (S.D. Fla. June 10, 2015). Indeed, the Government concedes that the privilege applies only in two circumstances: where there is an ongoing investigation, and where disclosure would "jeopardize future criminal investigations." *Id.* As there is no dispute that the Government's investigation has ended, *see* Mot. at 9, the only question is whether the documents at issue would disclose "law enforcement techniques and procedures." *See Fed. Election Comm'n v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020) (Goodman, M.J.).

Unsurprisingly, the Government fails to argue that the critical information Mr. Griffin is seeking—such as Mr. Littlejohn's electronic journal and memoranda of interviews with IRS personnel about their knowledge of Mr. Littlejohn's duties and responsibilities—would disclose such techniques and procedures. That's because they would not. As to Mr. Littlejohn's proffer memoranda, the Government concedes it waived any privilege that might have existed by showing them to Mr. Littlejohn. Mot. at 11 n.17; *see also In re Poly. Carpet Antitrust Litig.*, 181 F.R.D.

---

[7] The Government suggests that Mr. Griffin could have "question[ed] Mr. Littlejohn about the entries in the journal during his deposition." Opp'n at 16. The Government omits that it failed to produce, log, or otherwise disclose the existence of Mr. Littlejohn's journal, leaving Mr. Griffin to discover its existence during Mr. Littlejohn's deposition.

6

680, 689 (M.D. Ga. 1998) (noting that "the law enforcement investigatory privilege 'can be waived, and, once waived, is lost'"). The Government is required to establish that the law enforcement privilege applies on a document-by-document basis, Mot. at 14, and its blanket statements about applicability fail to satisfy its burden, Opp'n at 11-13.

*Second*, balancing "the interests of the litigant seeking the information against the government's interest in nondisclosure," shows that the "qualified privilege" should give way here. *See Rivera*, 335 F.R.D. at 548; *see also* Mot. at 15. "[T]he importance of the information sought" and the nature of the information as "factual data" rather than "evaluative summary," weigh strongly in favor of disclosure. *See Rivera*, 335 F.R.D. at 547-48. Indeed, "[m]any of the concerns typically underlying law enforcement privilege claims are inapplicable here" where there is no "confidential informant" or "confidential law enforcement strategies which would be revealed" by the disclosure of the investigative file. *See id.* ("The 'technique' involved here—interviewing fact witnesses and writing a report summarizing what the witness said—is hardly confidential."). The Government makes no argument to the contrary.

Instead, the Opposition relies on a declaration from TIGTA to suggest that if the *entire* investigative file is disclosed, at least some materials that are "generally included" in a TIGTA investigative file "could reasonably be expected to risk circumvention of the law." ECF 137-3 ¶¶ 5 & 8. But it is the Government's burden to then identify those specific documents, Mot. at 14, and it fails to demonstrate that *any specific document* in the investigative files would "serve as a roadmap for circumventing IRS and TIGTA controls." ECF 137-3 at ¶ 9. Indeed, it is undisputed there are materials in the investigative files that have no meaningful bearing on monitoring systems at the IRS that ostensibly exist or the Government's investigative techniques (*e.g.*, Mr. Littlejohn's communications with ProPublica, Mr. Littlejohn's electronic journal, etc.).

## 2. Section 6103 Does Not Prohibit Disclosure Of The Investigative Files

Section 6103 does not apply to the investigative files for two independent reasons: (i) the information was collected as part of a DOJ investigation and (ii) disclosure here falls under the statutory exception of Section 6103(h)(4). Mot. at 13-14.

The Government concedes that information collected by PIN (even with the assistance of TIGTA) under the DOJ's authority "is not protected by [Section] 6103,"[8] and it ignores Mr. Littlejohn's testimony that it was the Department of Justice and no longer TIGTA that was leading the criminal investigation as early as December 2021 when he was served a Grand Jury subpoena.[9] Although TIGTA has authority to conduct investigations of violations under Title 26 on its own, the Department of Justice's Criminal Tax Manual makes clear that TIGTA's investigative authority ended once PIN became involved and opened an grand jury investigation, and served a grand jury subpoena on Mr. Littlejohn.[10] Consequently, materials collected in or after December 2021—when DOJ/PIN became involved—were not "furnished to, or collected by the Secretary" of the Treasury, and thus are not "return information" under Section 6103. See Mot. at 13-14.

The Court need not reach this issue, however, because Section 6103(h)(4)(A) permits disclosure of return information "in a Federal or State judicial or administrative proceeding pertaining to tax administration"—such as this one—if "the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability" under Title 26, as Mr. Griffin's claims do. See ECF 88. The Government continues to have no meaningful response

---

[8] See Opp'n at 12; see also Mot. at 13-14.
[9] See ECF 119-1 at 239:2-13, 249:21-250:2, 294:11-295:19.
[10] See Criminal Tax Manual, Section 1.03 ("Before a case is referred to the Department of Justice, the IRS has authority to investigate using its administrative summons power. That power terminates when the Secretary of the Treasury has recommended that the Attorney General prosecute or conduct a grand jury investigation of a person for an offense connected with the administration of the internal revenue laws. 26 U.S.C. § 7602(d)(A)(I).").

to Section 6103(h)(4)(A)'s statutory exception, and does not even mention it in its Opposition.

### 3. The Privacy Act Does Not Prohibit Disclosure Of The Investigative Files

The Government does not dispute that this Court may order the disclosure of materials protected by the Privacy Act. Opp'n at 17. Instead, it argues that (i) "nothing [Mr. Griffin] seeks from PIN is relevant to his § 7431(a)(1) claim," (ii) "the harm to Mr. Littlejohn is tangible," and (iii) disclosure should be under the Protective Order. *Id.* at 17-19. These arguments are strawmen.

As an initial matter, the relevance of the PIN file—which includes proffer memoranda and Mr. Littlejohn's grand jury testimony about the unlawful disclosures—is described in detail in Mr. Griffin's Motion and above. Mot. at 10-11. Moreover, the Opposition fails to identify any harm to Mr. Littlejohn, nor could it, likely because there is no cognizable harm here. Indeed, Mr. Littlejohn himself stated in his deposition that he "wanted to come clean, take responsibility for [his] actions,"[11] and he declined to designate any of his testimony or production as confidential, demonstrating that he does not share the Government's supposed concern about potential harm. Second, Mr. Littlejohn already pled guilty to his offense, and while the Government asserts that an appeal is pending, none of the issues on appeal appear related to the merits of this case. Finally, courts permit disclosure under the Privacy Act when potential harm can be mitigated by, among other things, marking documents as "confidential," *see Am. Mod. Select Ins. Co. v. Sutherland*, 2013 WL 1767827, at *3 (N.D. Ala. Apr. 18, 2013), just as the information would be here.

### 4. The Government Has Waived Privilege Over The Investigative Files

The Government's privilege logs must "describe the nature of the documents" sufficiently to "enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5). But here, the Government identified authors of communications as "various" and included a single entry for the

---

[11] ECF 119-1 at 256:8-9.

entire "TIGTA investigative file." Mot. at 11-12. To the extent that the Government has taken issue with the fact that Mr. Griffin seeks the "entire" investigative files, he of course seeks only the relevant documents therein. Given the Government's facially insufficient privilege logs—indeed, the Opposition reveals for the very first time that the investigative files contain "thousands" of documents while the TIGTA and PIN privilege logs have a *combined* 14 entries—Mr. Griffin has no information at this point to determine the full scope of what is relevant in those files.

The Government now argues, only in a footnote, that "[m]ore detailed logs run[] the risk of disclosing information protected under [Section] 6103 and the law enforcement investigatory privilege" and "would impose a significant burden on TIGTA and PIN to log with specificity thousands of irrelevant and non-responsive records contained in their files." Opp'n at 11 n.3. This is, of course, not true; irrelevant and non-responsive documents need not be logged. But the Government already conceded that it is required to, and represented that it would, log responsive materials allegedly protected by Section 6103. *See* ECF 70 at 5. The Government made that concession because the law so requires, *see* ECF 71 at 5-6, and because this Court ordered the Government to log those materials, ECF 84. A finding of waiver is particularly appropriate where the non-producing party has suffered "prejudice that the Local Rules are specifically designed to avoid," given that the Local Rules are designed "to surface disputes over privilege early in the discovery period in order to give the parties (and, if necessary, the Court) time to resolve them." *Bautech USA, Inc. v. Resolve Equipment, Inc.*, 2024 WL 1929486, at *2 (S.D. Fla. May 2, 2024). With discovery set to close in a month, and the Government having still failed to provide a sufficient privilege log, the Government has waived any protection over items in its investigative files.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant the relief sought in Mr. Griffin's Motion.

10

Dated: May 10, 2024

Respectfully submitted,

By: */s/ Jason D. Sternberg*
William A. Burck (*pro hac vice*)
Derek L. Shaffer (*pro hac vice*)
Alexander J. Merton (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
ajmerton@quinnemanuel.com

John F. Bash (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
johnbash@quinnemanuel.com

Jason D. Sternberg (Florida Bar No. 72887)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
(305) 402-4880
jasonsternberg@quinnemanuel.com

Christopher D. Kercher (*pro hac vice*)
Peter H. Fountain (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue, 22nd Floor,
New York, New York 10010
(212) 849-7000
christopherkercher@quinnemanuel.com
peterfountain@quinnemanuel.com

*Counsel to Plaintiff Kenneth C. Griffin*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 10th day of May, 2024, I caused a copy of the foregoing document to be filed with the Clerk of Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

By: */s/ Jason D. Sternberg*
Jason D. Sternberg
Fla. Bar No. 72887
jasonsternberg@quinnemanuel.com