## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 22-cv-24023-SCOLA/GOODMAN

KENNETH C. GRIFFIN,

     Plaintiff,

v.

INTERNAL REVENUE SERVICE and U.S.
DEPARTMENT OF THE TREASURY,

     Defendants.

_____/

### OMNIBUS ORDER ON PLAINTIFF'S MOTION TO COMPEL
### DISCOVERY AND ON OTHER DISCOVERY DISPUTES

This case stems from non-party Charles Edward Littlejohn's ("Littlejohn") public disclosure of thousands of taxpayers' confidential tax return information to ProPublica, a news organization. [ECF Nos. 55; 111, pp. 5–6].[1] Kenneth C. Griffin ("Griffin" or "Plaintiff"), whose confidential tax return information was disclosed, seeks to hold the Internal Revenue Service ("IRS") and the Department of the Treasury ("Treasury" and collectively, "Government" or "Defendants") liable for the unlawful disclosure and has propounded written discovery in furtherance of his case.

---

[1]     In this Order, the Undersigned cites to the page numbers automatically assigned by the Court's CM/ECF system, appearing at the top, right-hand side of each page.

In a Post-Hearing Administrative Order, the Undersigned directed the Government to continue producing responsive documents "on a rolling basis up to and including the date of [ ] Littlejohn's deposition." [ECF No. 99, p. 2]. The Undersigned further stated that:

> **If Plaintiff wishes to obtain additional relief which would require the Government to resume its document production efforts past March 19, 2024, then Plaintiff will need to cite (page and line) to testimony from [ ] Littlejohn's deposition and any additional theories which might implicate the relevance of any continued discovery**. In other words, after March 19, 2024, the Government may cease its document production and will not need to start it up again unless and until Plaintiff can demonstrate to the Court through [ ] Littlejohn's deposition testimony *why* the Court should require the Government to resume its document production.

*Id.* (italics emphasis in original; bold emphasis added).

Pursuant to that Order, Griffin filed a motion to compel [ECF No. 111], the Government filed a response in opposition [ECF No. 137], and Griffin filed an optional reply [ECF No. 140].[2] The Undersigned is also considering the parties' earlier-filed briefs on the law enforcement investigatory privilege [ECF Nos. 70; 71; 77] and 26 U.S.C. § 6103

---

[2] With the Undersigned's permission, the parties filed unredacted versions of some of their filings under seal. *See* [ECF Nos. 118; 123; 134]. The Undersigned will rule on whether these filings should remain under seal in a **separate** Order. In this Order, however, the Undersigned will cite to only the publicly-available filings. Thus, there is no need to file this Order under seal.

[ECF Nos. 88; 89].[3]

In the instant motion, Griffin seeks to compel the Government to produce its investigative files regarding Littlejohn and communications between Littlejohn and certain IRS employees.[4] [ECF No. 111, pp. 12–13]. For the reasons discussed below, the Undersigned **grants in part and denies in part** Griffin's motion to compel.

I.      **Background**

        a.      **The Amended Complaint**

        Initially, Griffin's Amended Complaint alleged two causes of action for violations of 26 U.S.C. § 7431 (Count I) and the Privacy Act, 5 U.S.C. § 552a(e)(10) (Count II). [ECF No. 55]. Senior United States District Judge Scola, Jr. dismissed Count II "on the merits" and "without leave to amend." [ECF No. 108, p. 11].

        Griffin advanced three theories of liability in Count I: (1) Littlejohn was a United States employee when he unlawfully inspected and disclosed Griffin's confidential tax information; (2) IRS employees unlawfully disclosed Griffin's confidential tax return

---

[3]      Because the parties' earlier briefings are being considered in this omnibus-type Order, the Undersigned will not be issuing separate orders on the law enforcement investigatory privilege and section 6103.

[4]      Griffin refers to these individuals as either "IRS employees" or "IRS personnel." [ECF Nos. 111; 140]. But Griffin's motion describes at least one of these individuals as an "IRS contractor." [ECF No. 111, p. 13]. While this Order may, at times, use Griffin's terminology, the Undersigned makes *no* determination as to the employee-status or contractor-status of any individual.

information to Littlejohn without complying with section 6103; and (3) IRS employees failed to employ necessary data-security measures, resulting in the unlawful disclosure of Griffin's confidential tax return information. [ECF No. 55, ¶¶ 41–60].

As to Count I, Judge Scola permitted Plaintiff to proceed on his first theory of liability (that Littlejohn was a United States employee); but, as to the second and third liability theories, directed Griffin "to show cause why the Court should not dismiss these theories of relief based on a lack of subject-matter jurisdiction." [ECF No. 108, p. 8]. Plaintiff filed his show cause response [ECF No. 133] and the issue of whether Plaintiff may proceed on theories two and three remains pending before Judge Scola.

**b.      The Instant Motion**

As noted above, Griffin seeks to compel the Government to produce its investigative files regarding Littlejohn and communications (emails, texts, and instant messages) between Littlejohn and certain IRS personnel. [ECF No. 111, pp. 12–13]. He states that "[t]he Government's investigative files, and communications between [ ] Littlejohn and certain IRS employees, contain information that is critical to [ ] Griffin's claims and unavailable elsewhere." *Id.* at 13.

The Government asserts that: (1) the Treasury Inspector General for Tax Administration's ("TIGTA") investigative file is protected from disclosure under both § 6103 and the law enforcement investigatory privilege; and (2) the Public Integrity Section

of the Department of Justice's ("PIN") prosecutorial investigative file[5] "is protected from disclosure under the Privacy Act, § 6103, . . . and Fed. R. Crim. P. 6(e)." [ECF No. 137, p. 5].[6]

Additionally, the Government contends that Griffin's discovery requests are "designed to harass and investigate the investigators." *Id*. It insists that it "has provided Plaintiff with all the discoverable information related to [ ] Littlejohn's disclosure of Plaintiff's return information." *Id.* It also claims that Plaintiff failed to timely raise "any issue regarding the sufficiency of PIN's discovery responses" and the PIN privilege log, and therefore has waived any objection. *Id.* at 8–9.

---

[5]     Littlejohn was criminally prosecuted for unlawful disclosure in the District Court for the District of Columbia. *See United States v. Littlejohn*, No. 23cr343 (D.D.C. Sept. 29, 2023). He pled guilty to one count of disclosure of tax return and return information, in violation of Title 26, United States Code, § 7213(a)(1). [ECF No. 35 in Case No. 23cr343]. He was sentenced to 60 months' imprisonment, followed by 36 months of supervised release, a $100.00 special assessment, and a $5,000.00 fine. *Id*. He filed a notice of appeal and the matter remains pending before the United States Court of Appeals for the District of Columbia Circuit. [ECF No. 38 in Case No. 23cr343].

[6]     The Government also raises (but does not substantively address) the attorney-client privilege and the work product doctrine. [ECF No. 137, p. 5]. Because the Government fails to support these arguments, the Undersigned will not consider either ground as a basis for withholding the materials sought by Plaintiff. *See Flanigan's Enters., Inc. of Ga. v. Fulton Cnty., Ga.*, 242 F.3d 976, 987 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument).

II.     Analysis

a.      Preliminary Arguments: Relevance, Proportionality, and Waiver

The Government objects to producing the materials at issue on relevance, proportionality, and waiver grounds. [ECF No. 137, p. 9–10]. Griffin argues that the Government has waived any privilege over the TIGTA and PIN investigative files because it provided inadequate privilege logs. [ECF No. 140, pp. 12–13]. For the reasons discussed below, none of these arguments are persuasive.

i.      Relevance

The Government's relevancy argument can be dispatched readily. At least one theory of liability (and possibly all three) in Count I remains viable -- that Littlejohn was a United States employee when he unlawfully inspected and disclosed Griffin's confidential tax information. [ECF No. 55].

The Government steadfastly insists that Littlejohn was a Booz Allen Hamilton employee and that he acted alone. [ECF No. 137, pp. 12–13]. It cites to certain portions of Littlejohn's deposition testimony. *Id.* at 23 ("Mr. Littlejohn testified that he worked for [Booz Allen Hamilton] when he made the unlawful disclosure of the Plaintiff's return information, and that he has never been an employee of the IRS or the United States. (Littlejohn Dep. Tr. at 308:7–14; 316:6–8)").

But, as Griffin points out, Judge Scola's Order granting in part and denying in part the Government's motion to dismiss lists several factors to consider in determining Littlejohn's employment status. [ECF No. 140, p. 5]. These factors

> includ[e] "the IRS's supervision and control of Littlejohn's work," and whether the "IRS directly managed the scope and purpose of Littlejohn's daily tasks and projects, making sure he completed his training, monitoring his technical performance, controlling his access to IRS data and confidential information, and ultimately retaining the authority to reprimand or terminate him."

*Id.* (quoting [ECF No. 108, p. 5]). Thus, Griffin reasons that it is plainly evident that "Littlejohn's communications with his supervisors, close coworkers, and colleagues who determined the scope of his work and access to confidential IRS information, or memoranda of interviews of those individuals and [ ] Littlejohn himself" are relevant to determining whether Littlejohn was a United States employee. *Id.* at 5–6. The Undersigned agrees.

"[Federal Rule of Civil Procedure] 26 . . . sets forth a very low threshold for relevancy, and thus, the [C]ourt is inclined to err in favor of discovery rather than against it." *Medline Indus., Inc. v. Stryker Sustainability Sols., Inc.*, No. 2:19-CV-01415-JEO, 2020 WL 5845735, at *3 (N.D. Ala. June 2, 2020) (citation and internal quotation marks omitted). "The scope of discovery under Rule 26(b) is broad, and [i]nformation is relevant if it is germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible evidence." *Manno v. Healthcare Revenue Recovery Grp., LLC*, No. 11-61357, 2012 WL

4192987, at *3 (S.D. Fla. Sept. 18, 2012) (Scola, J.) (citation and internal quotation marks omitted).

Given this low hurdle, the Undersigned has no difficulty determining that the materials sought (including Littlejohn's electronic journal, memoranda of interviews with IRS personnel, and written communications between Littlejohn and specific IRS custodians) are relevant to Griffin's claim that Littlejohn was a United States employee at the time of the unlawful disclosure. [Of course, whether these relevant materials are also *discoverable* is a separate question.].

### ii.      Proportionality

On the issue of proportionality, the Government notes that it has "already produced 4,315 documents consisting of 45,709 pages of [electronically stored information ('ESI')], which included ESI from [ ] Littlejohn and Paul Wight and includes many documents in which each of the [nine] IRS personnel at issue appear." [ECF No. 137, p. 12]. It points out that the IRS has already expended "hundreds of hours gathering, reviewing, and producing" those documents and that Griffin "has not used a single one of the documents to date." *Id.*

The Government notes, for instance, that "[a]t [ ] Littlejohn's deposition, Plaintiff's counsel did not use a single page of the 27,329 pages [of ESI from Littlejohn and IRS employee Paul Wight] with the witness." *Id.* at 14. But as Griffin states in his reply,

"whether a document is marked as an exhibit in one deposition is . . . neither a fair nor sensible measure of relevance" and knowledge gained from *reviewing* the already-produced documents allowed Griffin to elicit targeted testimony from Littlejohn about the scope and conditions of his work. [ECF No. 140, p. 7 and nn.3–4].

The Government represents that the production of (just the emails) between Littlejohn and the nine separate IRS custodians "will require multiple levels of review for privilege and to confirm that production is permitted under § 6103." [ECF No. 140, p. 12].

In further support of its proportionality argument, the Government attaches declarations from IRS Branch Chief Andrew De Mello and Chief Counsel Attorney Bart Jeffress. These declarations address the process of retrieving and producing ESI discovery and the effort the Government has expended (to date) in responding to Griffin's discovery requests. They also set forth the efforts needed to produce ESI from the nine requested custodians. [ECF Nos. 137-4; 137-5]. Attorney Jeffress estimates that "it would require approximately **one and a half years** to complete review of and to produce the responsive, non-privileged documents from the 50,301 documents of [two of the nine requested custodians] in which the search term 'littlejohn' appears." [ECF No. 137-5, ¶ 17 (emphasis added)].

Griffin points out in his reply that he "is simply seeking [ ] **Littlejohn's direct 'To/From' communications with specified employees**, which the Government *already*

*collected and processed*, and which would screen out e-mail blasts and other irrelevant materials." [ECF No. 140, pp. 7–8 (italics emphasis in original; bold emphasis added)]. Thus, "the Government need only review documents already collected from [ ] Littlejohn's files and loaded into a Relativity database." *Id.* at 8 (emphasis omitted).

Lastly, the Government underscores the low "monetary value of this case[.]" [ECF No. 137, p. 13]. If Plaintiff prevails on Count I, then he would be entitled to $1,000.00 in statutory damages for Littlejohn's one-time disclosure of Griffin's confidential tax information to ProPublica. *Id.* at 13–14. But the same can be said of *any* case where only statutory damages are at stake.

The Undersigned is not persuaded by the Government's proportionality argument. Rule 26 instructs courts to "consider[ ] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Undersigned acknowledges that the Government has directed considerable resources to producing ESI discovery in this case -- in particular, in the leadup to Littlejohn's deposition, as detailed in the two declarations of Attorney Bart Jeffress. [ECF Nos. 101; 137-5]. However, the information sought by Griffin is both relevant to his claim

and narrowly tailored (the investigative files and *direct* communications between Littlejohn and specific IRS personnel amount to a limited universe of records).

Additionally, Griffin offers to shorten the list to five individuals[7] "[i]n the event that the Court is not inclined to order the Government to produce [ ] Littlejohn's communications with all nine IRS personnel[.]" [ECF No. 140, p. 8 n.5]. The Undersigned accepts Griffin's offer and finds that this condensed, five-custodian list further supports the Court's finding that the requested discovery should not be impeded on proportionality grounds. Absent an applicable privilege, the Undersigned will compel the disclosure of the requested materials (involving communications between Littlejohn and only the five individuals).

### iii.      Waiver

Both parties raise waiver arguments. Griffin argues that the Government's TIGTA and PIN privilege logs [ECF Nos. 111-10; 111-11] lack sufficient detail and, for this reason, the Court should order the Government to produce the *entire* TIGTA and PIN investigative files. [ECF No. 111, pp. 16–17]. The Government responds that Griffin's waiver argument "fails" because "[m]ore detailed logs run[ ] the risk of disclosing information protected under § 6103 and the law enforcement investigatory privilege" and

---

[7]      The custodians are: (i) Paul Wight, (ii) Marsha Coleman, (iii) Nanette Downing, (iv) Rene Schwartzman, and (v) Cody Thierry. [ECF No. 140, p. 8 n.5].

"it would impose a significant burden on TIGTA and PIN to log with specificity thousands of irrelevant and non-responsive records contained in their files." [ECF No. 137, p. 15 n.3].[8]

The Government also argues that Griffin failed to timely bring before the Court his objections to the PIN discovery responses or the PIN privilege log. [ECF No. 137, pp. 8–9; 21 n.5 ("Plaintiff has waived this argument because it [sic] only raised any issue related to the PIN's [sic] response to a request for its file for the first time in this motion.")]. Griffin responds to the Government's waiver argument by pointing out that he "challenged the Government's assertions of [s]ection 6103 and the investigatory privilege, on which the PIN log relied" in the two memoranda filed with the Court [ECF No. 140, p. 8 n.6 (citing [ECF Nos. 71; 88])].

The Undersigned is not persuaded by *either* side's waiver argument. Although the Government's privilege logs could certainly contain more detail, they do not impede the

---

[8]     This argument was improperly raised in a footnote. "[A]ddressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022).

Both parties are guilty of this transgression (in the instant round of briefs and in the earlier submissions). But if the Undersigned were to excise arguments and responses on this basis, all that would remain is a hodgepodge of incomplete, perforated points resembling Swiss cheese. To avoid this outcome, the Undersigned will excuse the non-compliance. However, going forward, the parties are expected to raise substantive points in the **body** of their filings.

Court from ruling on the instant dispute.[9] Additionally, while Griffin's briefings on the investigatory privilege [ECF No. 71] and section 6103 [ECF No. 88] do not address (and in some instances predate) the PIN discovery responses or the PIN privilege log, they are sufficient to permit the Court to reach the substance of the parties' disputes.

### b.     Substantive Arguments: Section 6103, the Law Enforcement Investigatory Privilege, and the Privacy Act

#### i.     Section 6103

The Government asserts that the TIGTA investigative file (and those portions of the PIN file that "passed through [TIGTA's] hands to PIN's prosecutors") is protected from disclosure under section 6103. [ECF No. 137, p. 16]; *see also* [ECF No. 89, p. 5, n.3 ("We acknowledge that information possessed by PIN **that did not flow through Treasury** may not be covered by § 6103." (emphasis added))].

#### a)     Return Information

Griffin argues that section 6103 does not apply to either investigative file "because the materials were collected as part of a DOJ investigation, not a TIGTA investigation." [ECF No. 111, p. 17]. He states that he "first learned from [ ] Littlejohn's testimony" that the "DOJ has led the criminal investigation of [ ] Littlejohn from as early as December 2021." *Id.* Thus, "all investigative materials the Government subsequently collected are

---

[9]     For example, the TIGTA privilege log omits the dates and the names of the authors/recipients.

neither return information under Section 6103 nor subject to its restrictions" and TIGTA's involvement "does not render information collected *as part of a DOJ investigation* return information under Section 6103." *Id.* at 17–18 (emphasis added).

The Government contends (as it did in its earlier submission [ECF No. 89]) that the TIGTA investigative file (and those portions of the PIN investigative file "flowing" from TIGTA) constitutes third-party return information prohibited from disclosure under section 6103. [ECF No. 137, p. 15]. It cites to TIGTA Special Agent Erik Wood's declaration, which is an exhibit to its earlier-filed section 6103 memorandum. [ECF No. 89-1 ("Wood Declaration")].

Among other things, the Wood Declaration attests that:

TIGTA [Office of Investigations ("OI")] conducted the investigation of the unlawful disclosure to ProPublica and determined that Charles Littlejohn was the source of such disclosure. After referral by TIGTA, the [DOJ], Criminal Division, Public Integrity Section (PIN) filed an Information. While TIGTA coordinated with PIN during the investigation and after referral, TIGTA independently determined the course of its investigation. TIGTA, however, shared its investigative findings with PIN that supported TIGTA's determination that an unlawful disclosure occurred.

*Id.* at ¶ 5.

Relying on the Wood Declaration, the Government argues in its section 6103 memorandum that "[t]he information that TIGTA received, prepared, and shared with PIN when it referred the Littlejohn matter 'passed through' the Secretary of Treasury and

14

is therefore Littlejohn's return information." [ECF No. 89, p. 4 (quoting *Ryan v. United States*, 74 F.3d 1161, 1163 (11th Cir. 1996))].

In the instant response, the Government maintains its assertion that "[t]he information in [TIGTA's] investigat[ive] file is *entirely* protected by § 6103, both in its hands, and to the extent it passed through its hands to PIN's prosecutors." [ECF No. 137, p. 16 (emphasis added)]. Consistent with its earlier memorandum [ECF No. 89, p. 5 n.3], the Government "acknowledge[s] that information PIN did not receive from TIGTA is not protected by § 6103" (but claims it is still not discoverable because "it is protected by the Privacy Act, Rule 6(e) of the Federal Rules of Criminal Procedure, and other privileges"[10]). *Id.*

The Government disputes Plaintiff's assertion that the "DOJ led the investigation of [ ] Littlejohn from the start" and notes that the out-of-context deposition testimony of "Littlejohn— **who lacks any foundational knowledge to state who was leading TIGTA's investigation**— should [not] trump the sworn testimony of the actual TIGTA agent who conducted the investigation." *Id.* (emphasis added)].

---

[10]     To the extent the term "other privileges" is meant as a placeholder, the Undersigned will consider only those grounds for non-production actually and substantively briefed by the Government. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue).

Griffin argues that "materials collected in or after December 2021—when DOJ/PIN became involved—were not 'furnished to, or collected by the Secretary' of the Treasury, and thus are not 'return information' under Section 6103." [ECF No. 140, p. 11]. He quotes section 1.03 of the Criminal Tax Manual, which states that:

> Before a case is referred to the [DOJ], the IRS has authority to investigate using its administrative summons power. **That power terminates when the Secretary of the Treasury has recommended that the Attorney General prosecute or conduct a grand jury investigation** of a person for an offense connected with the administration of the internal revenue laws. 26 U.S.C. § 7602(d)(A)(I).

*Id.* at n.10 (emphasis added).

The Undersigned agrees with the Government that the TIGTA investigative file (and those portions of the PIN file that were *exclusively* obtained from TIGTA) constitute "return information" under 26 U.S.C. § 6103.

Section 6103 defines "return information" to mean:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, **or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense**[.]

26 U.S.C. § 6103(b)(2)(A) (emphasis added).

16

This definition:

> is "very broad" and "reaches far beyond what the phrase 'return information' would normally conjure up." *Cause of Action v. IRS*, 125 F.Supp.3d 145, 163 (D.D.C. 2015). "Return information" has "evolved to include virtually any information collected by the Internal Revenue Service regarding a person's tax liability." *Landmark Legal Found, v. IRS*, 267 F.3d 1132, 1135 (D.C. Cir. 2001).

*Scott v. Treasury Inspector Gen. for Tax Admin.*, No. 18-80366-CIV, 2018 WL 7082718, at *8 (S.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 18-80366-CIV, 2019 WL 286856 (S.D. Fla. Jan. 17, 2019), *aff'd*, 787 F. App'x 642 (11th Cir. 2019).

In *Ryan*, the Eleventh Circuit observed that "the statutory definition of 'return information' confines it to information that has passed through the IRS." 74 F.3d at 1163. *Ryan* involved a civil, unlawful disclosure action under section 6103(b) brought by a former attorney who had been convicted of conspiracy to import marijuana and conspiracy to defraud the IRS. *Id.* at 1163.

In his unlawful disclosure action, Ryan alleged that the prosecutor in his criminal case had, on two occasions, illegally released return information. The first alleged disclosure concerned "a bar room conversation" where "the prosecutor purportedly made reference to Ryan's high living standard as being contrary to the limited income revealed on his tax returns." *Id.* at 1162. Following a bench trial, the district court found "there had been no improper release of return information" in that instance. *Id.*

17

The second alleged disclosure was "memoranda summarizing witness statements made to the prosecution both in interviews and before the grand jury." *Id.* Although "[v]irtually all of this information had been made public at Ryan's criminal trial," there were "statements of one confidential informant, who did not testify at trial, concerning Ryan investing in a marijuana load[.]" *Id.* The memoranda were obtained by a reporter. *Id.* The reporter and his editor refused to disclose the source of the memoranda. The trial court determined that "the contents of the memoranda were the prosecution's work product distilled from statements of trial witnesses and, consequently, were not 'return information' acquired from the IRS." *Id.*

On appeal, the Eleventh Circuit "note[d] that 'return information' requires a nexus between the data or information obtained and **the furtherance of obligations controlled by the tax laws (*i.e.* Title 26)**." *Id.* at 1163 (emphasis added). It also noted that:

> [w]hile there were tax aspects to the investigation of Ryan, the conspiracies of which he was convicted (importing marijuana and defrauding the IRS), violate Titles 18 and 21 of the United States Code. **Section 6103 of Title 26 protects only information filed with and disclosed by the IRS**, not all information relating to any tax matter.

*Id.* (emphasis added).

Here, Littlejohn was prosecuted and convicted under the tax laws, 26 U.S.C § 7213(a)(1). *See* Final Judgment [ECF No. 35 in Case No. 23cr343]. Thus, the requisite nexus

"between the data or information obtained [in the TIGTA file] and the furtherance of obligations controlled by the tax laws," *Ryan*, 74 F.3d at 1163, is present here.

Given section 6103(b)(2)(A)'s broad definition and the caselaw's expansive reading of the term "return information," the Undersigned concludes that the TIGTA investigative file (and those portions of the PIN file that were *exclusively* obtained from TIGTA) are "return information" under section 6103.

However, to the extent that any TIGTA or IRS personnel, *at PIN's direction*, assisted in the PIN investigation, those materials would **not** be return information. *Id.* ("[I]nformation collected by the United States Attorney's Office, **even with the assistance of an IRS Special Agent**, is not information belonging to the Secretary of the Treasury—it is within the custody of the Attorney General or the Department of Justice." (emphasis added)); *Baskin v. United States*, 135 F.3d 338, 339, 343 (5th Cir. 1998) (finding checks were not "return information" under section 6103(b)(2)(A) when "[a]n IRS Special Agent who was assigned to provide staff support to the grand jury under the supervision of the United States Attorney gave copies of the checks obtained by the grand jury to officers of [a police department's internal affairs division]").

For instance, items 3 and 4 of the PIN privilege log are described as "[p]roffer memoranda prepared by TIGTA agents" and item 7 is a "[r]eport from TIGTA agent regarding attempted interview of [ ] Littlejohn in November 2021." [ECF No. 111-11]. If

those items were prepared by TIGTA agents at the direction of DOJ, then they are not "return information" and are not protected from disclosure by section 6103 (the Undersigned will address the Government's other asserted grounds for withholding the PIN prosecutorial investigative file below). "[T]o be 'return information' any information must first be 'received by, recorded by, prepared by, furnished to, or collected by' the IRS." *Baskin*, 135 F.3d at 342 (quoting 26 U.S.C. § 6103(b)(2)).

### b)     Section 6103(h)(4)(A) Exception

Griffin argues that, if the Court concludes that the investigative files are covered by section 6103, then they are *still* discoverable under section 6103(h)(4)(A). [ECF Nos. 88, pp.6–9; 111, p. 17]. "Section 6103(a) provides that tax returns and return information generally must be kept confidential unless disclosure is specifically authorized by the Code. Section 6103(h)(4) authorizes disclosure in certain circumstances involving a judicial or administrative proceeding." *Whistleblower 14376-16W v. Comm'r of IRS*, 2024 WL 621603, *23 (T.C. Feb. 14, 2024).

Section 6103(h) states, in relevant part, that:

**(4) Disclosure in judicial and administrative tax proceedings.** -- A return or return information may be disclosed in a **Federal** or State **judicial** or administrative **proceeding pertaining to tax administration**, but only—

> **(A) if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title**;

(B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or

(D) to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

However, such return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

26 U.S.C. §§ 6103(h)(4) (emphasis added).

Griffin reasons that:

because this litigation—brought under an internal revenue law and based on violations of the internal revenue laws—is a quintessential "matter involving tax administration" and because it "arose out of, or in connection" with, determining [Littlejohn's] civil or criminal liability," under Title 26, "return information" can plainly be disclosed in the proceeding.

[ECF No. 88, p. 6–7 (footnotes omitted)].

He argues that section 6103(h) employs a broad standard in determining which

matters fall within its ambit:

> Sections 6103(h)(2)(A) and (h)(4)(A) both employ identical "arose out of" and "in connection with" language, which are broad phrases that mean "any link, association, or relationship" with the determination of the taxpayer's criminal liability under Title 26. *Whistleblower 972-17W v. Comm'r of I.R.S.*, 2022 WL 2718766, at *8 (T.C. July 13, 2022). Section 6103(h) thus provides a relation "standard that is quite broad" and excludes only those "proceedings that have only a remote relation to the determination of a taxpayer's liability." *Berkun v. Comm'r of IRS*, 2023 WL 6973206, at *4 (T.C. Oct. 23, 2023) (cleaned up).

*Id.* at 7, n.5. According to Griffin, "because this proceeding 'arose out of, or in connection with, determining' [ ] Littlejohn's liability, the investigative files are discoverable here." *Id.* at 8 (quoting 26 U.S.C. § 6103(h)(4)(A)).

The Government counters that section 6103(h)(4)(A) does not authorize the disclosure of the TIGTA file because it "allows return or return information to be disclosed in a judicial proceeding pertaining to tax administration but only" in two instances: "(1) [where] the taxpayer is a party [to] the proceeding, or (2) **the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such liability, in respect of any tax imposed under this title**." [ECF No. 89, p. 5 (emphasis added)].

The Government notes that the first instance is inapplicable because Littlejohn is not a party to this action. *Id.* (citing *Berkun*, 2023 WL 6973206, at *4). It also argues that the second instance does not apply here because "there is no necessary nexus between

Plaintiff's wrongful disclosure claim and the *determination* of Littlejohn's *criminal liability*; these separate actions merely arose from a common event." *Id.* at 6 (emphasis in original).

The Government cites *Berkun*. In that case, a petitioner sought "to compel the Commissioner of Internal Revenue [ ] to turn over the complete file from a grand jury investigation into [the petitioner], which the Commissioner obtained . . . pursuant to . . . Fed. R. Crim. P. 6(e)[ ]." 2023 WL 6973206, at *1.

The Commissioner argued that he had provided those documents which fit within the section 6103(h)(4) exceptions to the petitioner. *Id.* But he "refused to provide the complete set [of grand jury materials] on the ground that certain materials constituted third-party returns and that return information is shielded by section 6103[.]" *Id.* at *2. The third-parties were the targets of the grand jury investigation who were not the petitioner and other third-parties whose information was obtained in connection with the grand jury proceedings. *Id.* at *4.

The Tax Court addressed whether the petitioner was entitled to the disclosure of this information under the section 6103(h)(4)(A) exception. *Id.* at *3. At the outset, the Tax Court rejected the petitioner's argument that the grand jury materials were not return information. *Id.* at *5 ("Upon transmission of the [grand jury] materials to the IRS, the protections of section 6103 attached.").

It further found that the section 6103(h)(4)(A) exception did not authorize the disclosure of the materials because "the IRS's determination regarding the civil or criminal liabilities of the third-party targets had no bearing on the resolution of [the petitioner's] . . . tax liabilities or whether he [was] liable for the civil fraud penalty." *Id.* at *6.

The Government also distinguishes the whistleblower cases cited in Plaintiff's memorandum [ECF No. 88] on the ground that:

> Under § 7623 of the Code, a whistleblower may collect up to 30% of the proceeds collected by the IRS if the information supplied by the whistleblower contributed to such collection of tax of a third party. If the award is denied, the Tax Court has jurisdiction to review the denial. Unlike this case, **a whistleblower proceeding arises directly from the determination and collection of a tax owed by the third-party taxpayer. Whistleblower cases fit snuggly within the exception carved out by 6103(h)(4)(A) because whistleblower proceedings could not proceed but for the determination or collection in the third-party liability**. That is not the case here.

*Id.* at 7–8 (emphasis added).

Section 6103(h)(4)(A) permits the disclosure of returns and return information "in a Federal or State judicial or administrative proceeding pertaining to tax administration," if "the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability." 26 U.S.C. § 6103(h)(4)(A).

Here, Littlejohn is not a party to these proceedings. Thus, section 6103(h)(4)(A) authorizes disclosure only if "the [instant] proceeding arose out of, or in connection with, determining [Littlejohn's] civil or criminal liability." *Id*.

"Because the phrase 'arose in connection with determining a taxpayer's civil or criminal liability' is broader than the phrase 'arose out of determining the taxpayer's civil or criminal liability,' . . . [courts] turn [their] attention to the meaning of the phrase "in connection with." *Whistleblower 972-17W*, 2022 WL 2718766, at *7. "The Tax Court has interpreted the phrase 'in connection with' as meaning 'related to.'" *Id*. at *8. To be sure, "the phrase 'in connection with' establishes a standard that is 'quite broad.'" *Id.* At the same time, courts must "exclude from the scope of section 6103(h)(4)(A) those proceedings that have only a 'remote relation to' the determination of a taxpayer's liability." *Id.* at *9.

In *Whistleblower 972-17W*, the Tax Court had "no difficulty" determining that a whistleblower proceeding met the section 6103(h)(4)(A) exception because:

> When, as here, a whistleblower provides information to the IRS on a target taxpayer and the IRS proceeds with an action and collects proceeds from that target taxpayer, **the decision whether to grant the whistleblower an award—as well as [the Tax Court's] eventual review of that decision—is inextricably linked with determining the target taxpayer's civil or criminal liability for at least two reasons**.
>
> To begin with, the IRS's action in determining the target taxpayer's liability and the outcome of that action (including the collection of additional tax) are clear but-for causes of the proceeding before the Court. Indeed, under

the reasoning of [*Li v. Comm'r*, 22 F.4th 1014, 1017 (D.C. Cir. 2022)], **the existence of an IRS action to determine the liabilities of the target taxpayer is a prerequisite to [the Tax Court's] jurisdiction to hear any whistleblower case**, including this one. In that very direct sense, therefore, this case arose "in connection with" the IRS actions that determined the taxpayers' liabilities: [the Tax Court] could not hear the case without the actions.

Additionally, **what the IRS determined with respect to the target taxpayers and what it collected from those taxpayers are key inquiries in analyzing the merits of this proceeding**, which is focused on evaluating "the extent to which the [whistleblower] substantially contributed to [the IRS's] actions," I.R.C. § 7623(b)(1)—*i.e.*, the actions to "detect[ ] underpayments of tax, or . . . detect[ ] and bring[ ] to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same," I.R.C. § 7623(a)(1) and (2). Essentially, **the particulars of the IRS's actions that determined the target taxpayer's liabilities will decide the outcome of this case**. Given this reality, it is hard to see how one can resist the conclusion that this judicial proceeding arose in connection with (and is quite closely related to) determining the target taxpayers' liabilities or the collection of those liabilities. **The entire case is predicated on the whistleblower's assertion that the whistleblower's efforts gave rise to (or at least contributed to) the IRS's actions against the target taxpayers and substantially contributed to the IRS's determination that more tax was owed and to its ultimate collection. In that context, the proceeding has a very strong "logical or causal connection" to the IRS's determination of the target taxpayers' liability** and, as then-Judge Alito concluded in a similar context, arose in connection with (or in relation to) that determination. *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (quoting Webster's Third New International Dictionary 1916 (1971)).

*Id.* at *10 (emphasis added).

Griffin's case did not arise in connection with (or in relation to) determining the

criminal (or civil) liability of Littlejohn and is therefore outside the 6103(h)(4)(A)

26

exception. Griffin's claims against the Government are independent of Littlejohn's civil or criminal liability. In fact, when Griffin initiated the instant action, he did not know *who* had disclosed his confidential return information to ProPublica. It was not until Littlejohn was criminally charged (and the Information was unsealed) that Griffin learned Littlejohn was responsible for the disclosure. Even if the Government had decided not to charge Littlejohn, Griffin would still be able to bring the instant action under section 7431.

For these reasons, the Undersigned finds that the TIGTA investigative file (and those portions of the PIN file obtained *exclusively* from TIGTA) are protected from disclosure under section 6103.

### ii.        Law Enforcement Investigatory Privilege

The Government contends that the materials related to Littlejohn's investigation are protected from disclosure by the law enforcement investigatory privilege. [ECF Nos. 111-10; 137, pp. 17–20]. Griffin argues that "because the DOJ has represented to [him] that there is no longer an ongoing criminal investigation, the Government cannot meet its burden to establish the privilege." [ECF No. 111, p. 19].

"The proponent of the law-enforcement privilege bears the ultimate burden of demonstrating its applicability." *F.T.C. v. Timeshare Mega Media & Mktg. Grp., Inc.*, No. 10-62000-CIV, 2011 WL 6102676, at *4 (S.D. Fla. Dec. 7, 2011). As this Court has recognized, "[t]he qualified law enforcement investigatory privilege protects from disclosure **files**

**and reports of criminal and civil law enforcement investigations**." *Fed. Election Comm'n v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020) (emphasis added). Its purpose "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *JTR Enters., LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts & Quartz Crystals*, 297 F.R.D. 522, 529 (S.D. Fla. 2013) (internal quotation marks and citation omitted).

In applying this privilege, Courts consider the following factors:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the [G]overnment information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any actual criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Kahn v. United States*, No. 13-24366-CV, 2015 WL 3644628, at *2 (S.D. Fla. June 10, 2015).

Addressing some of these factors, Griffin states that: (1) requiring the disclosure of these materials would not discourage individuals from reporting information to the Government or reveal the identities of any informants; (2) rather than discouraging Government self-evaluation and program improvement, "[a]ccountability and remediation would reassure, rather than alarm, taxpayers"; (3) much of the information (screenshots of communications between Littlejohn and ProPublica as well as Littlejohn's social media data and online account information) is "factual data" (as opposed to "evaluative summary"); (4) the information is "integral" to Griffin's case because he has alleged that the IRS' lack of safeguards caused the disclosures to ProPublica and the withheld information "includes the 'details of IRS security audit, logging, and monitoring systems[ ]'"; and (5) the information is not available from other sources "because the Government seized [ ] Littlejohn's documents." [ECF No. 111, pp. 19–21].

The Government contends that it has met its burden of showing that the law enforcement investigatory privilege applies and cites to a second declaration from TIGTA Special Agent Wood. [ECF No. 137-3].

Special Agent Wood attests, in relevant part, that:

7.     All of the documents and information maintained in TIGTA's investigative file were generated and/or compiled, in their entirety, pursuant to TIGTA OI's investigation of the alleged unauthorized disclosure to ProPublica and include the evidence obtained and evaluated by TIGTA during the course of its investigation, as well as information

related to the nature, scope, and direction of its investigation into the alleged unauthorized disclosure.

8.      **As part of its investigation, TIGTA OI compiled information that could reasonably be expected to risk circumvention of the law if disclosed: (1) techniques, methods, and processes used to analyze potential unauthorized access at the IRS; (2) details of IRS security audit, logging, and monitoring systems that, if publicly known, might enable circumvention of portions of these systems; and/or (3) techniques for circumventing IRS information system security measures.** This information, which is sourced from the IRS, TIGTA, and witness/subject interviews, can generally be found in Forms OI 2028-M, digital evidence analysis reports, and investigative notes contained in the TIGTA investigative file.

9.      **This information is not well known to the public and may be used to circumvent IRS and TIGTA controls and processes to detect and prevent IRS database information security breaches. To the extent that this information is publicly known, when taken in context and in their totality with other elements of the unauthorized disclosure investigation, the information can serve as a roadmap for circumventing IRS and TIGTA controls and processes related to IRS system security.**

*Id.* at ¶¶ 7–9 (emphasis added).

The Government argues that Griffin failed to meet his burden of showing that his need for the information outweighs the Government's interest in protecting this information from disclosure. [ECF No. 137, p. 19].

According to the Government, Griffin failed to show why the TIGTA investigative file is important to his case. *Id.* It claims that ''[t]he only relevant issue is whether [ ] Littlejohn was an employee of the United States'' and notes that at his deposition, Littlejohn denied that he was. *Id.*

But, as Plaintiff points out in his memorandum, whether someone is a United States employee (as opposed to the employee of a contractor) "is a fact intensive inquiry." [ECF No. 111, p. 15 n.16]; *see also Bravo v. United States*, 532 F.3d 1154, 1159 (11th Cir. 2008) ("We have established the 'control test' for determining whether an individual is a government employee or an independent contractor: '[A] person is an employee of the Government if the Government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time.'" (quoting *Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000)).[11] Thus, whether Littlejohn considered (or did not consider) himself a United States employee is not outcome determinative.

The Government also argues that the information sought by Griffin is available through other means. [ECF No. 137, p. 20]. For instance, it notes that Griffin could have questioned Littlejohn about his electronic journal during his deposition, but failed to do so. *Id.* It also notes that the emails between Littlejohn and ProPublica could have been obtained directly from Littlejohn or ProPublica. *Id.*

The Government further argues that Federal Rule of Criminal Procedure 6(e) "prohibits discovery into any grand jury proceedings that may have taken place related

---

[11]      Whether the "control test" is -- so to speak -- *controlling* is not an issue that was briefed by the parties in the instant submissions. The Undersigned cites *Bravo* to illustrate the point that Littlejohn's deposition testimony concerning whether he considered (or did not consider) himself a United States employee does not shut the door on the inquiry.

to the ProPublica leak even if any proceeding was acknowledged by [ ] Littlejohn. Thus, to the extent any grand jury proceedings took place, any grand jury information in TIGTA's file is protected from discovery." *Id.* (citing *United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004)).[12]

Lastly, the Government argues that materials in the TIGTA file that are not grand jury materials (such as search warrants and affidavits) are not discoverable because they were filed under seal in the Littlejohn criminal case and "[t]his Court cannot compel the discovery of materials sealed by another court." [ECF No. 137, p. 20]. But the Government cites no legal authority for this proposition. Therefore, the Undersigned will not consider this argument. *See United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a "perfunctory and underdeveloped argument" with no citation to legal authority and collecting cases).

---

[12]     It is not necessary to address whether any grand jury materials in the TIGTA file are protected from disclosure under Fed. R. Crim. P. 6(e) because, as discussed above, the TIGTA investigative file is subject to section 6103 protection.

To the extent there are any grand jury materials in the PIN prosecutorial investigatory file, "the burden of demonstrating that the need for disclosure outweighs the need for, and public interest in, secrecy rests upon the private party seeking disclosure." *Aisenberg*, 358 F.3d at 1348. Here, Griffin has not made such a showing. Thus, the Undersigned will not compel the production of any grand jury materials (if they exist).

In his reply, Griffin points out that the Government does not argue that either Littlejohn's electronic journal or the memoranda of summarized IRS personnel interviews about Littlejohn's duties and responsibilities would disclose law enforcement techniques and procedures. [ECF No. 140, p. 9]. Additionally, he reiterates that the Government has waived any privilege over Littlejohn's proffer memoranda when it shared it with Littlejohn. *Id.*

Griffin argues that because "[t]he Government is required to establish that the law enforcement investigatory privilege applies on a document-by-document basis, . . . its blanket statements about applicability fail to satisfy its burden[.] *Id.* at 10. For instance, he notes that there are materials (such as Littlejohn's communications with ProPublica and his electronic journal) which "have no meaningful bearing on monitoring systems at the IRS . . . or the Government's investigative techniques[.]" *Id.*

Because the Undersigned finds that the TIGTA investigative file (and those portions of the PIN prosecutorial file that were obtained *exclusively* from the TIGTA investigation) is protected from disclosure under section 6103 and that the section 6103(h)(4)(A) exception does not apply, it is not necessary to address whether the law enforcement privilege also applies to the TIGTA investigative file.

To the extent the Government is arguing that the remaining portions of the *PIN* prosecutorial investigative file are protected by the law enforcement investigatory

privilege (and it is unclear whether it is raising that argument), that argument is not persuasive.

Applying the ten factors outlined above, the Undersigned notes that the Government has not made a showing that any citizens will be discouraged from providing information to law enforcement. As Griffin points out (and the Government does not contradict), there were no confidential informants in this case (which means no confidential identities will be disclosed).

The Wood Declaration [ECF No. 137-3] warns of the purported risk of disclosure of techniques, methods, and processes in only general terms. Notably, if the Government had wanted to make a more-robust showing, then it could have filed a more-detailed declaration under seal, like it did for IRS Technical Advisor Michael C. Dunn's Declaration [ECF No. 134-1]. It chose not to do that, however.

As to the remaining factors, at least some of the information the Government seeks to protect is factual (as opposed to evaluative summaries). Griffin is not a potential defendant in any actual or potential criminal proceeding stemming from Littlejohn's unlawful disclosure. The Government's investigation into Littlejohn is closed. He has been convicted and sentenced, and the Government does little more than point out that Littlejohn's appeal is pending.

The Government has not revealed the existence of any interdisciplinary proceedings arising from the Littlejohn investigation. Griffin's lawsuit is not frivolous and has survived the Government's vigorous motion to dismiss challenge with Count I still remaining. Notwithstanding the Government's irrelevancy claims, it is clear that the information sought is important to Griffin's remaining claim.

Thus, of the ten factors, only factor nine ("whether the information sought is available through other discovery or from other sources") weighs against Griffin, and even that factor would apply to some (but not all) of the materials.

In sum, the TIGTA file (and those portions of the PIN file that were obtained *exclusively* from TIGTA) is protected from disclosure by section 6103. However, as to the **remaining portions** of the PIN file,[13] the law enforcement investigative privilege would not impede its disclosure.

### iii.        The Privacy Act

The Government argues that the Privacy Act, 5 U.S.C. § 552a, prohibits the disclosure of the PIN prosecutorial investigative file. [ECF No. 137, p. 21].

---

[13]     Again, it is not clear the Government is seeking to withhold the remaining portions of the *PIN* prosecutorial investigative file under the law enforcement investigatory privilege. But both sides discuss items that are listed in the PIN Privilege log [ECF No. 111-11], such as communications between Littlejohn and ProPublica. Thus, out of an abundance of caution, the Undersigned includes the PIN prosecutorial investigative file in the discussion of the law enforcement investigatory privilege.

Griffin asserts that "the Privacy Act is not a shield from discovery, nor does it override the Government's civil discovery obligations under the federal rules." [ECF No. 111, p. 21]. He argues that the disclosure would not harm Littlejohn because he has already admitted his wrongdoing. Moreover, "the Government's investigative files are highly relevant to each of [ ] Griffin's theories of liability . . . and . . . the Government's blanket withholding has rendered the critical evidence otherwise inaccessible[.]" *Id.* at 21–22.

The Government takes a different view. It argues that "nothing that Plaintiff seeks from PIN is relevant to his § 7431(a)(1) claim" and, for this reason, the Court "need not conduct further balancing." [ECF No. 137, p. 22]. To the extent the Court is willing to engage in a balancing test, the Government asserts that "Littlejohn's actual and hypothetical legal issues remain outstanding" because he "has appealed his criminal conviction challenging his sentence" and is still "subject to civil liability for suits brought against him by his victims . . . under 26 U.S.C. § 7431(a)(2)." *Id.*

The Government again reiterates its position that Littlejohn is not a United States employee, and, for this reason, Griffin cannot establish the Government's liability under section 26 U.S.C. § 7431. *Id.* at 22–23. It states that "Plaintiff can no longer plausibly deny that [ ] Littlejohn was not an employee of the United States" because "Littlejohn testified that he worked for [Booz Allen Hamilton] when he made the unlawful disclosure of [ ]

Plaintiff's return information, and that he has never been an employee of the IRS or the United States." *Id.* at 23. Thus, according to the Government, Griffin has no need for the PIN prosecutorial investigative file.

Additionally, to the extent Plaintiff is seeking Littlejohn's journal (which is now in the Government's custody), the Government states that he should have asked Littlejohn about the contents of the journal when he took Littlejohn's deposition. *Id.* However, Griffin points out, in his reply, that because the Government failed to disclose the existence of the journal, Griffin learned of its existence at Littlejohn's deposition. [ECF No. 140, p. 9 n.7].

Lastly, the Government argues that if the Court is persuaded that the need for disclosure outweighs the harm to Littlejohn, then the records released under section 552a(b)(11) of the Privacy Act should be subject to this Court's Protective Order [ECF No. 86]. [ECF No. 137, p. 23].

Griffin does not directly oppose this request and in fact notes that "courts permit disclosure under the Privacy Act when potential harm can be mitigated by, among other things, marking documents as 'confidential,' **just as the information would be here**." [ECF No. 140, p. 12 (internal citation omitted; emphasis added)].

The Privacy Act provides that:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another

37

agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . pursuant to the order of a court of competent jurisdiction.

5 U.S.C. § 552a(b)(11).

The Eleventh Circuit states that "[r]equests for court orders under § 552a(b)(11) should be evaluated by balancing the need for the disclosure against the potential harm to the subject of the disclosure." *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1447 (11th Cir. 1984) (*per curiam*).

Here, the Government proffers only *speculative* harm, citing Littlejohn's pending appeal and the possibility that he may be subject to civil liability. [ECF No. 137, p. 22]. Notably, Littlejohn himself has not raised any of these concerns or sought to intervene in these proceedings to keep his information from disclosure. Moreover, the Undersigned has already rejected the Government's argument that the information sought by Griffin has no bearing on what remains of his lawsuit. *See* Section II(a.)(i.), *supra*. Because Griffin's "need for the disclosure" outweighs any inchoate, "potential harm to [Littlejohn]," *Perry*, 734 F.2d at 1447, the Undersigned will not permit the Government to withhold the PIN prosecutorial investigative file under the Privacy Act.

## III.   Conclusion

Based on the foregoing, the Undersigned directs the Government to produce within **two (2) weeks** of this Order: (1) the PIN prosecutorial investigative file (but not

38

those portions of the file which were obtained *exclusively* from the TIGTA investigation or any grand jury materials) and (2) the requested, direct communications between Littlejohn and (i) Paul Wight, (ii) Marsha Coleman, (iii) Nanette Downing, (iv) Rene Schwartzman, and (v) Cody Thierry. The PIN prosecutorial investigative file will be subject to the Protective Order [ECF No. 86].

 **DONE AND ORDERED** in Chambers, in Miami, Florida, on May 15, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record