UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:22-cv-24023-SCOLA/GOODMAN

KENNETH C. GRIFFIN,

       Plaintiff,

       v.

INTERNAL REVENUE SERVICE and U.S. DEPARTMENT OF THE TREASURY,

       Defendants.

## *EXPEDITED* MOTION TO COMPEL DISCOVERY

Pursuant to this Court's June 1, 2024 Order (ECF 149), Plaintiff Kenneth C. Griffin ("Mr. Griffin") respectfully submits this *Expedited Motion to Compel Discovery* from Defendants Internal Revenue Service ("IRS") and U.S. Department of the Treasury (together, the "Government").

## INTRODUCTION

On May 15, 2024, this Court granted Mr. Griffin's motion to compel and ordered the Government to produce, by May 29, portions of its investigative files that do not constitute "return information" under Section 6103—specifically, "the PIN prosecutorial investigative file (*but not those portions* of the file which were *obtained exclusively from the **TIGTA investigation*** or grand jury materials)." *See* Omnibus Order on Plaintiff's Motion to Compel Discovery ("Omnibus Order"), ECF 141 at 38-39 (emphasis added). Rather than comply with the Omnibus Order, however, on May 29, the Government produced from its investigative files only two proffer memoranda and emails between PIN and counsel for Littlejohn, remarkably claiming:

> ... **PIN obtained the evidentiary materials** for its prosecution of Charles Edward Littlejohn **exclusively from TIGTA**, except for the proffer memoranda. **Thus, our production of PIN's file is limited to the two proffer memoranda and emails between PIN and counsel for Littlejohn**.

The Government's conflation of the words "exclusively from TIGTA" with evidence obtained "exclusively from the TIGTA investigation" is merely the latest example of its "refus[al] to supply discovery that the Court has ultimately determined should have been produced." ECF 146 at 2. First, the Government violated the Omnibus Order by impermissibly withholding from production *all* materials PIN obtained except for two proffer memoranda rather than just those materials PIN obtained "exclusively from the *TIGTA investigation*" prior to PIN's involvement. Second, the Government's erroneous interpretation of the Omnibus Order flouts the clear terms of this Court's Order, with the Government unilaterally determining for itself that *all* information

1

physically obtained by TIGTA, *regardless of whether or not it was obtained in connection with a PIN investigation*, is "return information" protected from disclosure by Section 6103. These positions are lawless, and the Government knows it.

Indeed, when the Government, represented by some of the very same counsel appearing in this case, was defending itself against an unlawful disclosure claim in *United States v. Musin*, it cited the same authority and championed the same distinction between an "IRS investigation" and a "DOJ investigation" as Mr. Griffin argues in this case. There, the Government correctly argued that "return information" under Section 6103 "does not include information gathered by or provided to the DOJ," even if those materials are physically collected by the IRS or TIGTA in the first instance.[1] In the Government's own words:

> ***Tax return information is "data, received by, recorded by, prepared by, furnished to, or collected <u>by the Secretary [of the Treasury]</u>*** with respect to a return or with respect to the determination of the existence, or possible existence, of liability . . ."  26 U.S.C. § 6103(b)(2) (emphasis added). ***This definition does not include information gathered by <u>or provided to the DOJ</u>.*** Courts have consistently held that section 6103 "'is restricted to data . . . received by, recorded by, prepared by, furnished to, or collected by the Secretary [of the Treasury].'" *Ryan v. United States*, 74 F.3d 1161, 1163 (11th Cir. 1996) (quoting 26 U.S.C. § 6103(b)(2)(A)). **Consequently,** "***information collected by the United States Attorney's Office, even with the assistance of an IRS Special Agent, is not information belonging to the Secretary of the Treasury – it is within the custody of the Attorney General or the Department of Justice.***" *Ryan*, 74 F.3d at 1163; *see also Baskin v. United States*, 135 F.3d 338, 343 (5th Cir. 1998) ("As in Ryan, information collected by [the Department of Justice], even with the assistance of an IRS Special Agent, is not information belonging to the Secretary of the Treasury"); *Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 193 (Fed. Cl. 2005)(information that has not passed through the Service is not subject to section 6103(a)).[2]

The operative version of Section 6103 "was enacted to protect taxpayers from the IRS, not the IRS from taxpayers." *See In re U.S. v. NorCal Tea Party Patriots*, 817 F.3d 953, 965 (6th Cir.

---

[1] *See* Ex. 11, U.S. Opp. to Countercl. Pl.'s Mot. for Leave to Amend, *United States v. Musin, et al.*, No. 4:09-cv-00062 (S.D. Iowa March 10, 2011), ECF 265 at 17 (hereinafter "Musin Opp.").

[2] *See id.* at 17-18 (emphasis added).

2

2016); *see also* ECF 88 at 2-3 (discussing enactment and purpose of Section 6103). Yet here, the Government attempts to distort Section 6103 and twist it into a vehicle for withholding relevant evidence that would be directly responsive to Mr. Griffin's claim under Section 7431. The Government's continued discovery gamesmanship should not be rewarded. For the reasons explained below, the Government should be ordered to produce the following materials forthwith:

- A copy of the materials contained in the USB flash drives obtained by PIN on or around ▬▬▬▬ and ▬, 2023 containing, among other things: (1) Mr. Littlejohn's electronic journal concerning the inspection and disclosure of confidential return information; (2) a data dictionary that Mr. Littlejohn provided to ProPublica identifying the categories of confidential return information disclosed; (3) communications between Mr. Littlejohn and ProPublica; and (4) "information related to his unauthorized disclosure to ProPublica and the New York Times."³

- A copy of the responsive materials PIN obtained from ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

- Interview memoranda with IRS employees regarding the scope of Littlejohn's employment and responsibilities at the IRS.

- Any other materials in the Government's investigative files collected *after* TIGTA made a criminal referral to PIN (except for grand jury materials) which appears to be no later than December 2021, and may in fact be as early as November 2021.

## ARGUMENT

In producing from the PIN file just "two proffer memoranda and emails between PIN and counsel for Littlejohn," the Government claims that "PIN obtained the evidentiary materials for its prosecution of Charles Edward Littlejohn exclusively from TIGTA." Ex. 1, May 29, 2024 Ltr. from DOJ to Counsel for Mr. Griffin. First, this is false as a factual matter because PIN participated in the collection of those materials, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Second, it

---

³ Mr. Griffin does not seek any underlying taxpayer returns or return information that Mr. Littlejohn disclosed to the New York Times or ProPublica.

3

employs the wrong test as a matter of law—as is clear from the applicable caselaw and this Court's Omnibus Order, the question is **not** whether the materials in the PIN file were physically obtained by TIGTA, but instead ***whether PIN was involved in the investigation when the materials were obtained***. *See Baskin v. United States*, 135 F.3d 338, 342-43 (5th Cir. 1998) (material collected by IRS agent during grand jury investigation was not "return information").  As the Court explained, "to the extent that any TIGTA or IRS personnel, *at PIN's direction*, assisted in the PIN investigation, those materials would **not** be return information."  ECF 141 at 19 (emphases in original).  The Government thus improperly continues to withhold material in defiance of settled law generally and this Court's order specifically.

I.  **The Requested Materials Must Be Produced Because They Were Not Obtained Exclusively from the TIGTA Investigation**

Rather than complying with its own articulated position in *Musin*[4] and producing all of the materials collected by TIGTA agents *as part of PIN's investigation*, the Government instead relies on a tortured reading of the Omnibus Order and misleading declarations from TIGTA and PIN.

For example, PIN's latest declaration states that "TIGTA investigators independently took physical possession" of evidence, and that certain interview memoranda were "prepared independently by TIGTA investigators,"[5] yet it omits the specific dates that certain materials (*e.g.*, flash drives and interview memoranda sought by this motion) were collected and ignores emails that suggest these materials were collected or prepared by TIGTA in coordination with PIN and *in furtherance of PIN's* investigation.  Likewise, although TIGTA's latest declaration acknowledges

---

[4] *See United States v. Musin*, 2011 WL 13286526, at *2 (S.D. Iowa July 15, 2011) (adopting the Government's position that "[i]nformation obtained by the Department of Justice, even if in consultation with an IRS Special Agent, does not constitute 'return information' as defined by § 6103.").

[5] *See* Ex. 2, Jacobson Decl. ¶¶ 4-6.

4

that TIGTA "coordinated" with PIN "during the entire investigation," it obscures PIN's direct participation in gathering evidence for its own investigation (including the flash drives sought by this motion) by claiming that "[c]oordination with PIN" was generally limited to "TIGTA updating PIN on the status of the investigation […] and requesting assistance from PIN in obtaining court orders and search warrants to acquire evidence."[6]

But even the Government's own emails between PIN and Littlejohn's counsel refute the declarations' suggestion that all of PIN's evidence, including the materials sought by this motion to compel, was obtained without PIN's involvement or investigation—much less *exclusively from a TIGTA investigation*. For example, these records show:

- **December 21, 2021:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 4, IRS-0000849.

- **July 7, 2023:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 5, IRS-0000847.

- **July 25, 2023:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See* Ex. 6, IRS-0000895 (emphasis added).

- **September 8, 2023:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 7, IRS-0000702; Ex. 8, IRS-0000705.

- **September 12, 2023:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 9, IRS-0000216.

- **September 13, 2023:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



---

[6] *See* Ex 3, Moffit Decl. ¶ 5.

████████████████████████████████████████████. See Ex. 10, DOJ-0000000001 (Sept. 13, 2023 Proffer Memo).

Rather than suggesting an ongoing, wholly separate investigation led by TIGTA, the contemporaneous record underscores PIN's direct participation in gathering evidence for the investigation into Littlejohn. Specifically, the record shows—indisputably—that, at a minimum:

(1) ████████████████████████████████████████████;[7] (2) █



████████████████████████████████████████████";[8] and

(3) Littlejohn informed both TIGTA *and* PIN of the USB drives sought by this motion, which were provided to PIN as part of PIN's (not TIGTA's) ███████████ and proffer agreement with Littlejohn.[9] By the Government's own admissions, Section 6103 "does not include information gathered by or provided to the DOJ" "even if it is conducted with the [IRS's] assistance."[10] Accordingly, the requested materials must be produced.

## II. Responsive Information Dated After December 21, 2021 Was Not "Obtained Exclusively From The TIGTA Investigation" And Must Be Produced

"Return information" under Section 6103 is limited, in relevant part, to "data[] received by, recorded by, prepared by, furnished to, or collected *by the Secretary* [of the Treasury or their delegate]." 26 U.S.C. § 6103(b)(2)(A) (emphasis added). On the other hand, materials collected on *DOJ's* investigative authority are not furnished or collected by "the Secretary," regardless of whether such materials were physically given to TIGTA agents. *See* ECF 141 at 19 ("However,

---

[7] Ex. 4, IRS-0000849.
[8] Ex. 6, IRS-0000895.
[9] *See* Ex. 3, Moffit Decl. ¶ 8 ("Littlejohn's counsel advised *TIGTA and PIN* that Littlejohn maintained information related to his unauthorized disclosure to ProPublica and the New York Times on multiple flash drives." (emphasis added)).
[10] Musin Opp. at 17-18.

to the extent that any TIGTA or IRS personnel, at PIN's direction, assisted in the PIN investigation, those materials would not be return information."); *Musin*, 2011 WL 13286526, at *2.

Here, while TIGTA clearly had authority to conduct investigations of violations under Title 26 before DOJ became involved, TIGTA's *exclusive* investigatory authority ended and PIN's investigation into Littlejohn began by ███████████████████████████████████████████████████████████████[11] and clearly continued through ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[12]

DOJ's filings and TIGTA's Operations Manual also confirm that TIGTA's exclusive investigation ends when PIN becomes involved in the investigation and/or when TIGTA makes a referral to DOJ. *See* Musin Op. at 18 (*citing* 26 U.S.C. § 7602(d) which "curtail[s the] Service's investigative authority once it has referred a matter to DOJ"). Indeed, according to TIGTA's own Operations Manual regarding investigating UNAX Violations by an IRS employee, TIGTA is required to "[c]omplete all other investigative leads on current and former employees, witnesses, and third parties, *prior to referral to the USAO for a prosecutorial determination*." *See* TIGTA Operations Manual at (400)-290.8 (emphasis added). PIN's direct involvement in the investigation of Littlejohn from as early as December 2021 shows that the investigation of Littlejohn was no longer an exclusive TIGTA investigation (to the extent it ever was), but rather a DOJ

---

[11] Ex. 4, IRS-0000849.
[12] Ex. 5, IRS-0000847; Ex. 7, IRS-0000702 ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.").

investigation—and thus unencumbered by Section 6103. *See* DOJ Criminal Tax Manual, Updated 2022, Section 1.03 ("TIGTA special agents are [] available to assist Department of Justice attorneys in conducting grand jury criminal tax investigations," but in such circumstances are acting pursuant to DOJ authority.); *see also* ECF 141 at 19 ("[I]nformation collected by the United States Attorney's Office, *even with the assistance of an IRS Special Agent*, is not information belonging to the Secretary of the Treasury." (quoting *Ryan v. United States*, 74 F.3d 1161, 1163 (11th Cir. 1996)).

By contrast, information gathered through IRS "administrative investigations" that do not require independent authority from DOJ would likely be entitled to Section 6103 protection because such investigations are undertaken "using the summons procedures of 26 U.S.C. § 7602." *See* DOJ Criminal Tax Manual, Updated 2022, Section 1.03[1].  But the Government has represented that the investigation itself—*i.e.,* the search warrants it used as well as any process obtained—was carried out in conjunction with DOJ's approval, not TIGTA's authority as outlined in 26 U.S.C. § 7602.[13]

To be clear, Mr. Griffin seeks only materials that were collected pursuant to PIN's investigation. PIN's declaration seems to acknowledge tacitly that the USB devices that PIN obtained in ▮▮▮▮▮▮ and certain TIGTA interview memoranda were collected or created as part of PIN's investigation of Littlejohn, even though "TIGTA investigators independently took physical possession" of those materials and/or the memoranda were "prepared independently by TIGTA investigations" on behalf of and in furtherance of PIN's investigation. *See* Ex. 2, Jacobson

---

[13] Ex. 3, Moffit Decl. ¶ 5 ("Coordination with PIN generally consisted of . . . requesting assistance from PIN in obtaining court orders and search warrants to acquire evidence."); *id*. ¶ 6 ("TIGTA generally must obtain concurrence from a U.S. Attorney's Office prior to applying for a search warrant."); *see also* ECF 137 at 13 ("First, TIGTA did not issue a summons here and TIGTA did not conduct an administrative investigation related to a tax examination.").

Decl. ¶¶ 4-6. Indeed, PIN's declaration provides that "information in the internal notes and communications that came from TIGTA is [purportedly] protected under 26 U.S.C. § 6103," but does not make the same representation as to any of the other materials obtained by PIN with TIGTA's assistance. *Compare id.* ¶¶ 4-6, *with id.* ¶ 7.

Likewise, with respect to the flash drives sought by this motion, TIGTA's declaration admits that "Littlejohn's counsel advised TIGTA *and PIN* that Littlejohn maintained information related to his unauthorized disclosures to ProPublica and the New York Times on multiple flash drives." Ex. 3, Moffit Decl. ¶ 8 (emphasis added). And, although TIGTA's declaration highlights that "TIGTA agents collected the drive and transported it to a TIGTA office" and examined its contents (*id.* ¶ 9), it obscures the fact that Littlejohn disclosed the existence of (and ultimately abandoned / forfeited) these USB drives to PIN, as part of PIN's investigation, and in connection with Littlejohn's proffer agreement with PIN (not TIGTA). *Id.* ¶¶ 8-9; Ex. 6, IRS-0000895; Ex. 9, IRS-0000216. The suggestion that this evidence was derived *exclusively from a TIGTA investigation* is plainly contradicted by the record.

## CONCLUSION

For the foregoing reasons, Mr. Griffin respectfully requests that the Court order the Government to produce the PIN file by June 12, in time for Mr. Griffin to review the materials and prepare for depositions. The Government does not deserve any further benefit of the doubt or latitude to run out the clock as the close of discovery draws near.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to Local Rule 7.1(a)(3), undersigned counsel conferred with counsel for the Government by phone on May 31, 2024 in a good-faith effort to resolve the issues raised herein, but were unable to reach a resolution of the issues.

Dated: June 3, 2024

Respectfully submitted,

By: /s/ *Jason D. Sternberg*

William A. Burck (*pro hac vice*)
Derek L. Shaffer (*pro hac vice*)
Alexander J. Merton (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8334
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
ajmerton@quinnemanuel.com

John F. Bash (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
johnbash@quinnemanuel.com

Jason D. Sternberg (Florida Bar No. 72887)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
(305) 402-4880
jasonsternberg@quinnemanuel.com

Christopher D. Kercher (*pro hac vice*)
Peter H. Fountain (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue, 22nd Floor,

New York, New York 10010
(212) 849-7000
christopherkercher@quinnemanuel.com
peterfountain@quinnemanuel.com

*Counsel to Plaintiff Kenneth C. Griffin*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 3rd day of June, 2024, I caused a copy of the foregoing document to be filed with the Clerk of Court using the CM/ECF electronic filing system, which will send notification to all counsel of record.

By: */s/ Jason D. Sternberg*
Jason D. Sternberg
Fla. Bar No. 72887
jasonsternberg@quinnemanuel.com