UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-cv-24023-SCOLA/GOODMAN

KENNETH C. GRIFFIN,

    Plaintiff,

v.

INTERNAL REVENUE SERVICE and U.S.
DEPARTMENT OF THE TREASURY,

    Defendants.

_____/

## ORDER ON PLAINTIFF'S EXPEDITED MOTION TO COMPEL DISCOVERY

On June 10, 2024, the Undersigned held an under-seal[1] Zoom videoconference hearing on Plaintiff's Expedited Motion to Compel Discovery. [ECF Nos. 149; 150; 158; 159; 161]. At the hearing, the Undersigned **ordered** as follows:

At the outset, the Court notes that in civil cases, almost all discovery is done on the honor system. One side will propound a request for production and the other side will

---

[1] At the parties' request, the Undersigned held the June 10, 2024 Zoom discovery hearing under seal. [ECF Nos. 158; 159]. The Court has instructed the parties to order the transcript on an expedited basis and to file a joint redacted version of the hearing transcript. [ECF No. 159]. The Court will later review the parties' redactions to ensure that they are warranted. But because the instant Order does not disclose any sensitive information, it is not filed under seal. The Undersigned anticipates that the number of redactions will be extremely modest.

say, to provide one illustration: for this category, here are the responsive documents; for this other category, we are asserting a privilege; and for this last category, we have no responsive documents. For the most part, courts accept at face value what those representations are because, if the rule were otherwise, courts would have to have mini-evidentiary hearings on every interrogatory answer and every response to a document request (and discovery and the ruling on discovery would become unworkable).

So almost every facet of discovery operates on the honor system. If it turns out that a party has made a misrepresentation, especially to a court, and the court finds out about it, then the judge will have quite a different conversation with the person, party, or lawyer who made that misrepresentation. That is just how it works and it would be impractical for it to be any other way.

As one court observed:

> Discovery production is akin to an honor system. **We trust that attorneys uphold their professional obligations and responsibilities by following the Federal Rules of Civil Procedure to produce relevant, nonprivileged information, after a reasonable inquiry, that is within their client's possession, custody, and control. As a general rule, attorneys do not second-guess each other's processes for producing responsive information**. They may request more information after an initial disclosure or argue about objections, but generally they do not need a deep dive into the collection, review, and processing methodology of their opponent. **If second-guessing was the norm, the whole discovery system would break down into an endless barrage of motions based on mistrust about the opponent's production. Counsel's status as an officer of the court, combined with the possibility of serious sanctions embedded in Rules 11 and 37 and other professional disciplinary measures, serve as a deterrent to lawyers from either intentionally or negligently failing to produce information**. Trust in an adversarial process appears contradictory at first,

> but it is the bedrock of modern discovery practice and has worked well for decades. Occasionally, however, a court is faced with requests by parties to look behind the curtain and allow exploration of an opponent's discovery production processes . . . , more colloquially known as "discovery on discovery."

*LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 156 (N.D. Ill. 2023) (emphasis added); *see also Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 515 (D. Minn. 1997) ("[A]s a matter of practical reality, the Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable.").

Here, Plaintiff has developed a certain narrative concerning the investigation and prosecution of non-party Charles Edward Littlejohn ("Littlejohn"). The problem for Plaintiff is that the Government emphatically and unequivocally says it did not happen in the way portrayed by Plaintiff's theory, and it has submitted three declarations, made under penalty of perjury, from: (1) Treasury Inspector General for Tax Administration ("TIGTA") Special Agent in Charge Erik Wood [ECF No. 89-1]; (2) Special Agent in Charge of the Cybercrime Investigations Division for TIGTA Scott H. Moffit [ECF No. 153-4]; and (3) Department of Justice, Criminal Division, Public Integrity Section ("PIN") trial attorney Jonathan E. Jacobson (who prosecuted Littlejohn) [ECF No. 153-3].

At the hearing, Plaintiff's counsel stated, in response to the Court's inquiry, that he is not accusing the Government of committing perjury or of making misleading representations. As a practical matter, however, that is exactly what he is implying.

3

Indeed, the accusation that the Government is lying is more than an *implicit* allegation. Plaintiff essentially makes those allegations in his motion to compel, and they are explicit.

For example, on page 3 of his redacted, expedited motion to compel [ECF No. 153], Plaintiff describes the Government's position as "**lawless**" and then says "the government knows it." (emphasis added). On page 4, Plaintiff describes the Government's claim that "PIN obtained the evidentiary materials for its prosecution" of Littlejohn "exclusively from TIGTA" as "**false** as a factual matter." (emphasis supplied). On page 5, he accuses the Government of relying on a "tortured reading" of the Omnibus Order and on "**misleading declarations** from TIGTA and PIN." (emphasis added).

The Court has not been provided with a convincing reason why the declarations should be ignored or rejected. The mere fact that the Government would prefer not to disclose the information does not mean that the declarations are factually inaccurate or that they should be set aside. The information Plaintiff seeks could certainly be relevant to his claims. But relevance is not the standard used to determine if information is protected by 26 U.S.C. § 6103.

Plaintiff's motion to compel [ECF No. 153] is premised on his perception that the Government has not complied with the Court's Order requiring it to produce (among other things) "the PIN prosecutorial investigative file (but not those portions of the file which were obtained *exclusively* from the TIGTA investigation or any grand jury

4

materials)." [ECF No. 141, p. 39 (emphasis in original)].

Plaintiff cites *United States v. Musin*, No. 09-cv-00062 (S.D. Iowa Mar. 10, 2011) in support of his position "that return information under section 6103 does not include information gathered by or provided to the DOJ." [ECF No. 153, p. 3 (internal quotation marks omitted)]. But, as the Government points out in its response, "it do[es] not dispute this [statement] and ha[s] consistently taken the position that information PIN obtained **from sources other than the TIGTA investigation** is not return information." [ECF No. 156, p. 10 (emphasis added)].

Plaintiff posits that *PIN* was in control of the investigation and that TIGTA was doing its bidding. But the problem with that theory is that it is merely a speculative hunch which directly and significantly conflicts with the three declarations submitted by the Government:

**Wood** has worked in the TIGTA Office of Investigations ("OI") since 2019. [ECF No. 89-1, ¶ 1]. He attests that TIGTA is a separate agency and operates independent of the IRS. *Id.* at ¶ 2. TIGTA's duties include conducting investigations relating to the programs and operations of the IRS and has "the authority to enforce criminal provisions of the internal revenue laws and other criminal provisions of law relating to internal revenue[.]" *Id.* at ¶ 3.

In response to the unauthorized disclosure of return information to ProPublica:

TIGTA OI conducted the investigation . . . and determined that Charles Littlejohn was the source of [the] disclosure. After referral by TIGTA, [PIN]

5

> filed an Information. **While TIGTA coordinated with PIN during the investigation and after referral**, <u>**TIGTA independently determined the course of its investigation**</u>. **TIGTA, however, shared its investigative findings with PIN that supported TIGTA's determination that an unlawful disclosure occurred**.

*Id.* at ¶ 5 (emphasis added).

**Moffit** has been the Special Agent in Charge of TIGTA's Cybercrime Investigations Division since 2023 and was the assistant special agent from 2018 to 2023. [ECF No. 153-4, ¶ 1]. When he was an assistant special agent, Moffit was assigned to supervise the investigation into the unlawful disclosure of return information to ProPublica. *Id.* at ¶ 4.

During the entire course of this investigation, TIGTA coordinated with PIN, "but TIGTA independently determined the course of the investigation." *Id.* at ¶ 5. TIGTA's "[c]oordination with PIN generally consisted of TIGTA updating PIN on the status of the investigation and new developments during the investigation and requesting assistance from PIN in obtaining court orders and search warrants to acquire evidence." *Id.*

As part of its investigation,

> **TIGTA collected information and evidence and shared this information and evidence with PIN**. This primarily included verbal updates on relevant information identified, drafts of legal process with summaries of facts acquired from TIGTA's investigation – *e.g.*, search warrants, court orders pursuant to 18 U.S.C. § 2703(d), and applications for such warrants and orders – and a limited set of memoranda or other documents regarding interviews and other investigative activity.

*Id.* at ¶ 6 (emphasis added). Under 28 C.F.R. § 60.1, TIGTA had to "obtain concurrence from a U.S. Attorney's Office prior to applying for a search warrant." *Id.* (footnote

6

omitted).

Additionally, TIGTA agents were present with PIN attorneys at two proffer meetings with Littlejohn and his attorney on September 13 and December 11, 2023. "TIGTA agents took notes during the proffer meetings, reduced the notes to memoranda of interview and provided the memoranda to PIN on October 26 and December 13, 2023, respectively." *Id.* at ¶ 7.

Littlejohn provided TIGTA with multiple flash drives (including the "camel" flash drive[2]), which TIGTA searched with Littlejohn's consent. *Id.* at ¶¶ 8–9. "After analysis and extraction, TIGTA provided the extracts of portions of data on the flash drive to PIN," including Littlejohn's electronic journal. *Id.* at ¶ 9. "TIGTA shared its investigative findings with PIN, which was the basis of the information, subsequent plea agreement, and forfeiture under 26 U.S.C. § 7302." *Id.* at ¶ 10.

**Jacobson** joined the DOJ through the Honors Program in 2016. [ECF No. 153-3, ¶ 1]. He is one of the attorneys who prosecuted Littlejohn in *United States v. Littlejohn*, No. 1:23-cr-00343 (D.D.C.). He attests that "TIGTA investigators independently took physical possession of media on which [Littlejohn's] journal was stored" and "TIGTA investigators [later] provided an electronic copy of the journal to PIN." *Id.* at ¶ 4.

---

[2] Plaintiff's counsel explained, during the hearing, that the flash drive was found in a box with a camel on its cover -- and this scenario triggered the informal and colorful name.

TIGTA investigators also took possession of media on which Littlejohn's communications with ProPublica were stored and later provided a copy of those communications to PIN. *Id.* at ¶ 5. He further attests that "investigative notes, reports, and interview memoranda . . . [were] prepared independently by TIGTA investigators" who later "provided copies of certain notes, reports, and interview memoranda to PIN." *Id.* at ¶ 6. "While TIGTA coordinated with PIN during the investigation and after referral, TIGTA independently determined the course of its investigation." *Id.* at ¶ 9.

Jacobson represents to the Court that "PIN will produce proffer memoranda from proffer interviews with Littlejohn, which were attended by PIN attorneys, as well as communications between PIN and Littlejohn's counsel that are not protected by Federal Rule of Criminal Procedure 6(e)." *Id.* at ¶ 8.

Thus, on the one hand, the Court has Plaintiff's counsel's hunches, arising (apparently) from an interpretation of Littlejohn's deposition testimony and a review of some of the communications produced in discovery that suggests to Plaintiff that PIN was in the driver's seat and telling TIGTA agents what to do.

On the other hand, the Court has three **declarations** [ECF Nos. 89-1; 153-3; 153-4], made under penalty of perjury, from government employees with personal knowledge of the investigation and prosecution of Littlejohn, each attesting that **TIGTA was in charge of its own investigation**.

Courts typically rely on declarations like the ones submitted here, and the

Undersigned sees no reason to deviate from that norm. Applying the normal, presumptive approach, the Undersigned takes those declarations at face value. For these reasons, the Court **denies** Plaintiff's motion to compel.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on June 10, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record